**Ruth ENGLANDER, Plaintiff**

**v.**

**Arthur S. FLEMMING, Secretary of Health, Education and Welfare of the United States of America, Defendant.**

United States District Court
S. D. New York.
July 25, 1960.

Szold, Brandwen, Meyers & Blumberg, New York City, for plaintiff.

S. Hazard Gillespie, Jr., U. S. Atty. for Southern District of New York, New York City, Chas. T. Beeching, Jr., Asst. U. S. Atty., New York City, of counsel, for the United States of America.

CASHIN, District Judge.

This is an action pursuant to Title 42 U.S.C.A. § 405(g) for a review of a decision of the Secretary of Health, Education and Welfare denying plaintiff a so-called "disability freeze" provided for in 42 U.S.C.A. § 416(i). Both sides have moved for judgment on the pleadings. The pleadings include, pursuant to 42 U.S.C.A. § 405(g), a certified copy of a transcript of the record including the evidence upon which the findings and decision complained of are based.

The only question for decision is whether there was substantial evidence to support the Secretary's finding that the plaintiff was not disabled within the meaning of 42 U.S.C.A. § 416(i). The statutory definition of "disability" is—

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration, * * *."

The plaintiff, who was born in 1900, from 1931 until 1941 was engaged as a secretary and office manager by Apfel & Englander, an accounting firm, three members of which were brothers of the plaintiff. On January 30 and February 8, 1941, while engaged in her duties, plaintiff sustained injuries to her back. These injuries caused her hospitalization until the latter part of July 1941. After her discharge from the hospital plaintiff continued to wear a cast for about a year and was ambulatory only with the use of crutches. She was rehospitalized from May 5, 1942 to July 1942, at which time a different cast was applied. Soon thereafter plaintiff commenced wearing a brace. Plaintiff continued to use crutches until 1951 and since that time has used a cane. From 1942 through 1958 plaintiff was treated for various ailments which the Referee found to have no connection with the original claimed disability. Plaintiff continues to receive workmen's compensation benefits under New York State Compensation Law, as permanently totally disabled.

[1] As part of the record before the Referee, certified to the court, there are included reports of various physicians who treated plaintiff. Based upon the reports of these physicians, the Referee found that the physical condition of the plaintiff "when considered alone is not so severe that it would incapacitate [a totally normal individual]." The Appeals Council accepted this finding of the Referee. Although plaintiff strongly contends that such a finding must be overruled, I am constrained to disagree. A perusal of the reports fails to indicate that any of the physicians found the physical condition of the plaintiff such that she would be precluded from performing sedentary activities of a remunerative nature. Absent a finding of such physical condition by the physicians, the Referee's and Appeals Council's inference that the plaintiff was not totally incapacitated cannot be upset by the court.

The Referee, however, found that "it appears from the evidence that the effect of [plaintiff's] neurosis increases and intensifies the impact of her physical impairment and renders her unable to engage in substantial activity of a gainful nature." This finding of the Referee the Appeals Council rejected and found rather "that the [plaintiff] has neither physical nor mental impairments which singly or in combination render her unable to engage in substantial gainful activity." I find myself constrained to determine that the finding of the Appeals Council is without substantial evidence.

In the record before the agency there were reports of Sherwood Jacobson, M. D., a neurosurgeon, and Arnold Davidson, M.D., a psychiatrist. Dr. Jacobson, in answering a query on a New York State Department of Social Welfare form, stated that plaintiff had a "rather severe psychopathology." This answer was expanded in a formal written report by Dr. Jacobson, as follows:

"It is my impression that this patient does have a disease of her lumbosacral back and does have a herni-

ated nucleus pulposus on the right and probably located at the lumbosacral interspace. She certainly does have pain; of this I am convinced. However, I believe that the pain she has, and this is what accounts for her disability, is not that severe that in a strongly motivated individual would incapacitate him other than slowing him down somewhat. I feel that this patient has rather extensive psychopathology and it is the combination of the psychopathology, that may be related to the death of her fiance, combined with her back difficulties which render her unable to work."

Dr. Davidson, who was queried as to his prognosis for present or near future capacity for substantial gainful employment, stated "Poor—even with psychiatric treatment—for present or near future employment." This prognosis was expanded in Dr. Davidson's formal written report as follows:

"I would diagnose her as a character neurosis, obsessive compulsive type with schizoid features. This she was before the accident and undoubtedly it influences her complaints but the organic pathology due to the injury is incontrovertible. At age 58 I think this patient is a poor prospect for therapy considering all of the circumstances."

The Appeals Council, of course, did not ignore the psychiatric evidence summarized above but rejected the conclusion of the Referee on the following grounds:

"This defect, [plaintiff's character neurosis] if such it be, the claimant had before her accident and it does not appear to have impaired her ability to engage in substantial gainful activity at that time. If this be so then it cannot be said that it would significantly impair her ability in that regard at this time or at anytime after the accident either alone or superimposed upon the physical impairment which resulted from that accident. It, of course, is obvious from the evidentiary facts in the case that there is no mental aberration which requires the claimant's continued institutionalization or constant supervision nor is there any defect apparent which has resulted in severe loss of judgment, intellect, orientation, or memory."

I cannot comprehend how the Appeals Council reasons that because the character neurosis alone did not, prior to plaintiff's accident, prevent her from engaging in substantial gainful activity, it therefore could not, coupled with the physical impairment, cause plaintiff's inability to engage in substantial gainful activity. The medical experts have found, on the contrary, that it did. There is no evidence in the record at all which would contradict their findings. Therefore, under the doctrine of Teeter v. Flemming, 7 Cir., 1959, 270 F.2d 871, I find that the Appeals Council was in error in rejecting the uncontradicted medical evidence and I reinstate the finding of the Referee as to plaintiff's disability from the time of her accident in February 1941. Perhaps, the Appeals Council was led into error by a consideration of the fact that § 404.1501(e) of Title 20 of the Code of Federal Regulations lists as examples of mental ailments causing disability—

"(5) Damage to the brain or brain abnormality which has resulted in severe loss of judgment, intellect, orientation or memory.

"(6) Mental disease (e. g., psychosis or severe psychoneurosis) requiring continued institutionalization or constant supervision of the affected individual."

The fact that it might have so been led into error is indicated since these examples are paraphrased in the portion of the opinion quoted above. Of course, the mere fact that examples of types of mental impairment giving rise to mental disability are listed in the regulations does not at all mean that those examples are intended to be exclusive.

Although the Appeals Council did not so state, defendant argues that

the rejection of the plaintiff's claim should be affirmed on the ground that the alleged mental defect was not medically determinable. Defendant cites no authority for this proposition, nor do I believe any could be found. Because there has been no physical damage to the brain, and plaintiff is not psychotic, does not at all, as apparently contended for by defendant, preclude the possibility of mental disease medically determinable which would cause disability. In fact, § 404.1501 of Title 20 of the Code of Federal Regulations, quoted above, recognizes the fact that a mental disease, in the nature of psychoneurosis, is medically determinable. Since a psychiatrist, based upon an examination, has reached the conclusion that the patient has a neurosis, I cannot, and the Appeals Council could not, without contradictory evidence, find that such neurosis was not medically determinable.

Plaintiff's motion is granted.

Defendant's motion is denied.

Settle judgment.