Carl J. **DODSWORTH**, Appellant,

v.

Anthony **CELEBREZZE**, Secretary of Health, Education and Welfare of the United States of America, Appellee.

No. 21731.

United States Court of Appeals
Fifth Circuit.

July 26, 1965.

Robert O'Conor, Jr., Laredo, Tex., for appellant.

James R. Gough, Asst. U. S. Atty., Houston, Tex., for appellee.

Before MARIS,* RIVES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The issue here is whether the District Court was correct in holding that there was substantial evidence to support the Administrator's decision denying to Dodsworth disability insurance benefits under the freeze provisions of the Social Security Act, 42 U.S.C.A. §§ 416(i), 423(c), on the ground that as of the critical date his disability was not of such severity that he could engage in no "substantial gainful activity." [1] We have concluded the Appellant is right and the case must be remanded for further administrative proceedings.

Dodsworth applied to the Social Security Administration in October 1961 to establish a period of disability and for insurance benefits stating that he had become unable to work in March 1961. The Board of Old Age and Survivors Insurance denied the application and on its refusal to reconsider, Dodsworth requested a hearing which was held on January 8, 1963 before a Hearing Examiner at the VA Hospital in Temple, Texas, where Dodsworth was a resident at the Veterans Domiciliary. The medical

---

* Of the Third Circuit, sitting by designation.

[1]. This is the only ground involved as it was recognized by everyone that Dodsworth clearly met the earnings requirement.

reports and testimony of the Applicant revealed these facts about the man and his background.

Dodsworth was born in 1908, received an 8th grade education, and had worked most often as a laborer in construction jobs. During World War II, he was in the service for three years and was discharged in 1945. Between 1946 and 1950, he was a victim of pulmonary tuberculosis—most of this time being hospitalized in Denver. In the five or six years prior to the filing of his application he did heavy construction work, but by March 1961 found himself unable to continue in this kind of work. Dodsworth had applied for one of the many salaried positions at the VA Domicilary in Temple, but had been turned down because he "wasn't in condition to do it." At the time of the hearing, he, as did all residents of the Domiciliary, had a work duty—his job being to sort laundry a few hours, several days each week. He was unable to obtain outside employment for the simple reason that due to his inability to pass employer imposed pre-employment medical examinations, no employer would hire him. He testified that he could no longer do construction work because he was short-winded, and that his inability to pass medical examinations prevented him from doing lighter work in machine shops. He recounted an instance in the past when he was dismissed from employment as a railroad signalman (termed light work by him) after examination by the company doctor. He had been refused employment in a Temple meat market because of his prior TB condition.

He obviously felt that his tubercular condition had reactivated for his chief complaints were shortness of breath and swelling of the chest. The medical reports offered little objective substantiation for a claim of reactivated tuberculosis. They do, however, make it quite clear that we are by no means dealing with a hale and well man.

Dr. Kitchens examined Dodsworth on October 16, 1961, diagnosing his condition as pulmonary tuberculosis (in-active) and amblyopia, left eye, cause unknown. He apparently has been without the use of his left eye all his life. Following discharge in Memphis he took up residence at the domiciliary at the VA Center in Biloxi, Mississippi where on March 1, 1962, he was again examined, this time by Dr. Hall. The diagnoses were:

"1.  Tuberculosis, pulmonary, minimal, inactive.

"2.  Amblyopia, left eye, cause unknown.

"3.  Hiatus hernia.

"4.  Paranoid personality."

Inquiry leading to the fourth conclusion was the result of an impression formed by the Domicilary physician "that his disability was more mental than physical." Dr. Knox, a staff psychologist, confirmed this hypothesis. She concluded that while Dodsworth appeared to be of low-normal intelligence, his reasoning was defective.

"His rigid, suspicious manner of thinking interferes markedly with his functioning on this type of task. He is quite evasive on the Rorschach Test and in the few associations he produces, a thinking disorder is suggested [though none was demonstrated by symptoms]. * * * this man appears to employ schizophrenic modes of thinking."

■ The Hearing Examiner's decision, dated March 28, 1963, was that Dodsworth was not disabled within the meaning of the statute and after denial of review by the Appeals Council, this decision became final. The Examiner, after reviewing the data contained in the medical reports, concluded that there was no objective substantiation for the asserted disability. Strong reliance was made on Dodsworth's own statement that he could *"work now* if they will eliminate compensation boards so that they will pass you so that you can work" (emphasis supplied). The qualification following the big "if" was given short shrift by the Examiner's explanation that: " * * this is not in accordance with the *estab-*

*lished facts* in this case. There is no evidence of reactivation of the tubercular process since 1950 and he has had the left eye condition all his life, yet he worked regularly with construction companies for more than ten years after 1950." [2] (Emphasis supplied.) This far we think there is ample basis for the fact findings of the Hearing Examiner. Although the post-hearing medical reports submitted to the Appeals Council of Dr. Eanes reveals that Dodsworth's physical condition was perhaps worsened, the Examiner was entitled to conclude that there was no real evidence that any *physical,* medically determinable condition is preventing Dodsworth from engaging in some form of light but substantial gainful activity.

But here we reach a point of departure. For what is shown by the record is that Dodsworth quite obviously has some serious psychosomatic difficulties which may render him unemployable.

With regard to the psychologist's report that Dodsworth had a paranoid personality which inhibited his reasoning ability, the Examiner first emphasized that Dodsworth "was *not considered to be psychotic",* and then wrote:

"  *   *   *   even if it be assumed that from time to time there have been, or are, clouds on claimant's horizon, so to speak, claimant is in that respect in the company of a large, perhaps predominant segment of the human population, and cannot be considered merely by reason thereof to have earned entitlement to full social security benefits."

██ It is therefore quite apparent that the Hearing Examiner viewed this evidence from the standpoint of determining whether Dodsworth was, by virtue of a mental condition alone, statutorily incapacitated. Tying this in to the unrevealing statement that the evi-

dence showed "no phychosis," the Examiner lapsed into the notion so often rejected by us, that unless Dodsworth was suffering from conditions beyond that which life calls on many to bear, there can be no compensable disability. This was error. This was far too limited an approach. See Page v. Celebrezze, 5 Cir., 1963, 311 F.2d 757, 762–763; Hayes v. Celebrezze, 5 Cir., 1963, 311 F.2d 648. No attempt was made to evaluate the uncontradicted evidence of paranoid personality in the light of the clear impression, afforded by both the medical and clinical records and the testimony of Dodsworth himself, that Dodsworth had psychosomatic difficulties which in fact kept him from obtaining work. See Englander v. Flemming, S.D. N.Y., 1960, 186 F.Supp. 773. The question is not what man must bear, nor what men generally bear. The question is whether in the light of all of the evidence it is medically demonstrable that from the operation of these mental-psychological defects on his general physical condition, it was improbable that he could obtain and hold gainful employment.

██ As the fact findings of the Administrator carry such awesome weight, it is essential that the proper legal standard be employed in the appraisal of the evidence. This was not done here. Accordingly, the case must be reversed and remanded for further and consistent administrative proceedings.

██ In remanding this case, as in Hayes v. Celebrezze, supra, 311 F.2d at 654, "[w]e do not undertake to blueprint these proceedings on remand." The present record may be used with both parties being free to supplement it, and a new decision should be reached on that total record, in light of the guidelines here laid down.

Reversed and remanded.

2. The record shows that his work record was very sporadic for health reasons between 1951 and 1956, but was fairly consistent between 1956 and 1961.