**Marion W. JACKSON, Plaintiff-Appellant,**

v.

**Elliott L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant-Appellee.**

No. 71–2107

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Oct. 26, 1971.

---

* [1] Rule 18, 5th Cir. See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 431 F.2d 409, Part I (5th Cir. 1970).

Charles Tyler Clark, Birmingham, Ala., for plaintiff-appellant.

Wayman G. Sherrer, U. S. Atty., Henry I. Frohsin, Asst. U. S. Atty., Birmingham, Ala., for defendant-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, *Circuit Judge:*

Marion W. Jackson appeals from the judgment of the district court affirming upon review under § 205(g) of the Social Security Act[1] the final decision of the Secretary of Health, Education and Welfare, holding that he is not entitled to a period of disability or to disability insurance benefits under §§ 216(i) and 223 of the Social Security Act.[2] After a careful review of the record and briefs in this case we find ourselves compelled to disagree with the court's finding that the Secretary's determination is supported by substantial evidence, and therefore vacate and remand.

This court is fully cognizant of the narrow scope of judicial review of the Secretary's decision which is permitted by the Act[3] and the presumptive weight which attaches to the Secretary's findings.[4] In cases of this type courts are limited to considering whether the decision of the Secretary is supported by substantial evidence on the record considered as a whole. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Blanks v. Richardson, 439 F.2d 1158, 1159 (5th Cir. 1971). The court is not to retry the case *de novo* and may not substitute its judgment for that of the Secretary, Alsobrooks v. Gardner, 357 F.2d 110 (5th Cir. 1966); Bridges v. Gardner, 368 F.2d 86, 90 (5th Cir. 1966). Nevertheless, substantial evidence required to uphold the Secretary's findings and decision is more than a mere scintilla, and means such relevant evidence as a reasonable mind might accept to support a conclusion. Williams v. Finch, 440 F.2d 613, 615 (5th Cir. 1971); Bridges v. Gardner, *supra*; Merrell v. Gardner, 397 F.2d 65 (5th Cir. 1968).

In order to qualify for disability benefits under the Social Security Act, a claimant must have impairments which deprive him of his capacity to work to the extent that he is unable to engage in any substantial gainful activity.[5]

The Hearing Examiner recognized in his findings that Jackson suffers from a respiratory problem, an epigastric condition, and the surgical absence of his right arm [amputated 6 inches below the shoulder as a result of an injury while in the armed forces during World War II]. In his analysis, the Hearing Examiner considered the evidence tending to show that Jackson was afflicted to a degree with arthritis. However, he concluded that in the absence of films confirming the condition, the arthritis does not constitute a significant impairment of Jackson's ability to function.

---

1. 42 U.S.C. § 405(g).

2. 42 U.S.C. §§ 416(i) and 423.

3. "The findings of the Secretary as to any fact, if *supported by substantial evidence,* shall be conclusive, * * *." 42 U.S.C. § 405(g).

4. To the extent that there is any conflict in the record as to the severity of impairments and the degree of resulting restriction, the conflict is for the Secretary to resolve. Staples v. Gardner, 357 F.2d 922 (5th Cir. 1966).

5. 42 U.S.C. § 423(d) (2) (A).

The Hearing Examiner concluded that these physical impairments, considered singly or in combination with each other, were not sufficiently severe to entitle Jackson to disability benefits. Additionally he found that Jackson's impairments do not prevent him from engaging in substantial gainful activity in either his usual occupation in a gas station or as an operator of a retail store, or in some other light to sedentary work areas described in the testimony of the vocational expert.

Our review of the record convinces us that there is little dispute with respect to Jackson's physical impairments. The central issue for the Hearing Examiner and the Secretary was whether those impairments result in such disability as would prevent Jackson from engaging in substantial gainful activity within the terms of the statute. After a careful examination of the entire record we are convinced that the Secretary's conclusion that Jackson's impairments nevertheless permit him to engage in substantial gainful activity is not supported by substantial evidence.

The first part of the Hearing Examiner's conclusion was that Jackson has the functional capacity to resume his usual occupation in a gas station or as an operator of a retail store. The record is devoid of any support for this conclusion. The uncontroverted medical evidence established that Jackson suffered from chronic bronchitis, with probable emphysema; [6] chronic gastritis; [7] and the surgical absence of his right arm. The undisputed medical evidence also established that Jackson is unable to participate in activities which require physical exertion.[8]

The vocational expert summoned by the Hearing Examiner was asked by the Examiner how he would characterize Jackson's work prior to his work in the gas station or in the retail store; he answered:

"Well, from a worker trait characteristic point of view, I would say that it would range from light to heavy jobs that would require stooping, kneeling, crouching, crawling, reaching, lifting, standing, walking, talking, hearing."

The vocational expert was then asked how he would classify Jackson's work in the gas station and in the grocery store and again responded, from light to heavy. Significantly, the vocational expert did not at any time suggest that a man with Jackson's impairments could perform either as a gas station or retail store operator. In fact the vocational expert observed that all of the jobs which he had suggested for a man in Jackson's position were less demanding physically than running a grocery store [Jackson's last employment]. In view of the clear evidence establishing the disability we conclude that there is no con-

---

6. Hospital Summary, 1959—FINAL DIAGNOSIS: (1) Chronic obstructive pulmonary emphysema; Report of Dr. Frank Abernathy, 1968—IMPRESSION: Chronic obstructive emphysema; Report of Dr. Adrian Chandler, 1969—DIAGNOSES: (1) chronic bronchitis with probable emphysema.

7. Hospital Summary, 1959—FINAL DIAGNOSIS: (2) chronic gastric indigestion; Report of Dr. Frank Abernathy, 1968—IMPRESSION: chronic gastritis; Report of Dr. Adrian Chandler, 1969—DIAGNOSES: (2) Duodenal ulcer, active.

8. Report of Dr. Frank Abernathy, 1968—"[Jackson] has marked dypsnea [shortness of breath] on exertion at the present time. He is able to carry on some routine activity but is unable to participate in any activity which requires exertion."
Sworn statement of Dr. Adrian Chandler, August 7, 1969—
"Q. In your judgment, would a job that required physical exertion be hard for Mr. Jackson to do on a regular basis?
A. I think so. Anything of repeated effort, put it this way. Two reasons: Because of his arm and because of his bronchitis.
Q. Would climbing stairs with any regularity or walking a considerable distance at a fairly normal pace be likely to produce shortness of breath?
A. Would cause shortness of breath, yes."

trary evidence in the record to support the Hearing Examiner's conclusion that Jackson could return to his former occupation.

But the Hearing Examiner also found that even if it be concluded that Jackson could not return to his former work, "the testimony of the vocational expert makes clear that there are a number of jobs in the regional and national economy, although perhaps not all the jobs mentioned, for which the claimant is qualified by age, education and experience."

In order to place the vocational expert's testimony into proper perspective, it is necessary to review the conclusions of the expert in the context of his examination by the examiner. The Hearing Examiner posed a hypothetical question in the following terms:

Q. * * * I am going to ask you that taking into consideration what you have heard here today and from examination of the exhibits, can you suggest any work in the national economy that you think this claimant can do, taking into account his testimony today?

A. You are not offering me any assumption here?

Q. Not at this point.

A. Well, based on my—

Q. I will review his testimony in that he has said—and if I am wrong, Mr. Keener, please correct me. He has condition of shortness of breath which is being treated by medication, which he says relieves the tightness in his chest. He is being treated by diet and medication for an ulcer—for an ulcer condition. And he states that he is also being treated for arthritis which he experiences more in the winter time than any other time. He refers to his condition as more of a soreness than a tightness. He states he has no trouble sitting; that he can't stand too long; that his hip begins hurting if he sits. Where once he could lift over 100 pounds, he feels he can now lift only 25 pounds.

He has indicated no difficulty in manipulating his fingers, his wrists, his elbows, shoulders, ability to raise his hand above his head. He states he cannot walk too far without feeling shortness of breath; requires a period of rest after walking flights of stairs, a flight of stairs. He has also alleged a condition of hemorrhoids which he uses a self-prescribed Preparation H.

At this point the Hearing Examiner asked counsel for Jackson if the question was generally correct. Counsel responded that he was not sure that it was incorrect, but raised the question as to the claimant's ability to sit for long periods of time. The Hearing Examiner then extended his question:

Q. I asked if he had any difficulty while sitting and he said "no." One more thing, claimant is licensed to drive and does drive an automobile. He does not use his prosthesis, and has not used his prosthesis for any of the work that he has related. Now, with that in mind, having heard him testify today those conditions which I have repeated from his testimony, do you find any work in the national economy that you feel he could do taking into account the non medical factors such as age and education?

In answer to this question, the vocational expert said:

A. Based on the claimant's testimony and alleged restriction, physical restrictions, shortness of breath, which is brought about by walking, inability to stand for continued periods of time, I would say that he would be very limited in performing any jobs in the competitive labor market based on his personal testimony.

At this point the Hearing Examiner proceeded with an apparent cross-examination of the expert. On a number of occasions after asking a question the Examiner interrupted the expert's answer in order to assert other facts. Some questions were only partially answered and some were not answered at all. Under the skillful questioning and

**1330**

interruption of the examiner, the expert was led to alter his initial testimony that Jackson would be very limited in performing any jobs in the competitive labor market. After some colloquy about how long Jackson could stand, the expert concluded that if Jackson could tolerate the pain in his hip and stand for more than 25 minutes, there are some jobs that he could perform. The experts listed several jobs of a light and sedentary nature.

We are impressed with the fact that the vocational expert's initial impression of Jackson was that he would be very limited in performing any jobs in the competitive labor market. The vocational expert was the last person to testify at the hearing. When he took the stand, he had heard all the testimony and had had an opportunity to observe the claimant, Jackson. In addition, he had examined the exhibits and had listened as portions of a previous hearing concerning Jackson's disability claim were read. In view of this opportunity to view the evidence, and the summary review provided by the Hearing Examiner in proposing the question touching on Jackson's impairments, we believe that the first answer of the expert so weakens his later conclusion, that his testimony following his "conversion upon the stand" is not such relevant evidence as a reasonable mind might accept to support the conclusion that Jackson could perform substantial gainful activity.

The Secretary is not required to show that some job exists for which Jackson would be hired. The burden is on Jackson to prove disability, and if there were substantial evidence that jobs exist in the economy that Jackson could perform the Secretary's decision would be affirmed. King v. Finch, 428 F.2d 709, 711 (5th Cir. 1970). But the evidence presented by Jackson clearly establishes his impairment, as the Secretary in his brief concedes. As we have already noted, the Secretary's conclusion that Jackson is capable of performing at

his old occupations operating a gas station or a retail store is wholly unsupported by the record. The evidence as to whether Jackson's impairments are so disabling as to deprive him of his capacity to engage in even physically light or secondary employment is equivocal and contradictory and does not rise to the level of substantial evidence.

Upon examination of the record here, we believe that a further hearing before the Hearing Examiner is required to determine whether Jackson's impairments, although preventing his return to his former occupation, so disable him as to prevent him from engaging in any substantial gainful activity. Daniel v. Gardner, 390 F.2d 32 (5th Cir. 1968); King v. Finch, supra. Cf. Gray v. Secretary of Health, Education and Welfare, 421 F.2d 638 (5th Cir. 1970).

The judgment of the district court is vacated and the case remanded for further proceedings in accordance with this opinion.