Gladies BROWN

v.

Joseph A. CALIFANO, Jr., Secretary Health, Education and Welfare.

Civ. A. No. 761338.

United States District Court,
W. D. Louisiana,
Shreveport Division.

May 25, 1978.

---

Joel M. Sermons, Shreveport, La., for plaintiff.

Edward L. Shaheen, U. S. Atty., Leven H. Harris, Asst. U. S. Atty., Shreveport, La., for defendant.

DAWKINS, Senior District Judge.

## RULING

This action was filed on December 17, 1976 under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for review of a decision by the Secretary denying plaintiff's application for a period of disability and for disability insurance benefits, and supplemental security income benefits under Titles II and XVI of the Social Security Act.

The Secretary filed an answer and a motion for summary judgment, supported by brief, and also has filed the complete record in the case. Plaintiff has filed a brief in opposition to respondent's motion, and prays for judgment in her favor.

We carefully have examined the pleadings and the 141-page record, including all exhibits filed. Plaintiff filed an application for a period of disability and for disability insurance benefits on August 27, 1975, and an application for supplemental security income on October 24, 1975, alleging that she became unable to work on June 20, 1975 at age 53. The applications were denied initially and on reconsideration by the Bureau of Disability Insurance of the Social Security Administration, based upon evaluation of the evidence by the physician and disability examiner of the Louisiana State agency, who found plaintiff was not under a disability.

Upon timely request by plaintiff, a *de novo* hearing was conducted by an administrative law judge at Shreveport, Louisiana, on March 16, 1976. This hearing later was reopened to receive further medical reports. Plaintiff appeared without counsel, and was accompanied by two witnesses. At this hearing, there was a medical advisor in attendance, and a vocational expert, at the request of the Law Judge. It was established at this hearing that plaintiff was injured on or about July 7, 1975, and was unable to return to her former employment at the date of hearing. She also was unable to work following the hearing according to

the last medical evidence in the record. On May 21, 1976, the Law Judge rendered his decision adversely to plaintiff. (Tr. 8–16.) The Appeals Council received further medical evidence from plaintiff's treating physician and on November 29, 1976, affirmed the decision of the Law Judge (Tr. 4–5).

Our role on review merely is to determine whether there is substantial evidence to support the Secretary's decision. *Goodman v. Richardson*, 448 F.2d 388 (5th Cir., 1971); and ". . . 'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . .'" *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "'Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," . . . and it must be enough to justify, if the trial were to a jury, refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.'" *Breaux v. Finch*, 421 F.2d 687 (5th Cir., 1970), and *Columbia LNG Corp. v. Federal Power Com'n*, 491 F.2d 651 (5th Cir., 1974).

The burden of proof in social security cases rests upon the plaintiff. *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir., 1973) and *Hart v. Finch*, 440 F.2d 1340 (5th Cir., 1971). The single issue here is whether there is substantial evidence in the record as a whole to support the administrative conclusion that plaintiff is not disabled, as that term statutorily has been defined. *Rivas v. Weinberger*, 475 F.2d 255, 257 (5th Cir., 1973).

The role of courts in reviewing a denial of Social Security disability benefits is extremely narrow, but this does not mean that they must abdicate their traditional judicial function of scrutinizing the record as a whole to determine the reasonableness of any decision reached. Social Security Act, §§ 205(g), 223(d)(2)(A), (d)(5), 42 U.S.C.A. §§ 405(g), 423(d)(2)(A), (d)(5). We are aware that, once a social security disability claimant succeeds in establishing inability to perform his usual work, the burden shifts to the Secretary to show that there is some other kind of "substantial, gainful work" which the claimant is able to perform. *Lewis v. Weinberger*, 515 F.2d 584 (5th Cir., 1975).

Plaintiff's earnings statement is found at Tr. 81 showing her earnings from 1959 through 1974, and had fully insured status at the date of hearing, which continues to September 30, 1979. She was born on May 12, 1922.

In her petition, plaintiff alleges that she is totally and permanently disabled within the meaning of the Social Security Act, precluding her from engaging in any type of substantial gainful activity as a result of a hysterectomy, surgery for correction of a compound fracture of the right ankle, meniscectomy of the left knee, thrombo phlebitis of the left leg, gastric ulcers, and arthritis, particularly of the lumbar spine. Plaintiff's only prior employment was as maid. She had worked continuously for one employer for approximately twenty-two years. As found by the Law Judge, her work involved ironing, sweeping, mopping, cleaning woodwork, washing dishes and cooking, which required her to walk, stoop, lift light objects at times, and sit. He found also from a medical report by Dr. Combs, a certified internist, to whom he sent plaintiff after the hearing, that with respect to her residual functional capacity questionnaire, plaintiff is currently unable to walk, sit, or lift ten pounds, but is able to use her hands for repetitive tasks and is able to work with arms extended at the waist or shoulder level. Plaintiff was hospitalized several times at Schumpert Memorial Hospital, first on July 9, 1975 after she had fallen on concrete striking both knees approximately one week before. On this occasion she was in the hospital for several days. She again was hospitalized there on February 5, 1976 and discharged on March 5, 1976, and was able to walk only with a "walker". She continued on with her medication after being discharged. This was a short time before the hearing on March 16, 1976. The record shows further (Tr. 134–

135) that plaintiff was readmitted to the hospital and on March 28, 1976 a left medial meniscectomy was performed to repair a tear of her left medial meniscus. The Law Judge further stated in his decision that the Board-certified internist, Dr. S. B. Combs, after his examination of plaintiff filed his report dated April 1, 1976. It then was his impression that plaintiff was obese, had a history of thrombo phlebitis of the left leg, and was presently experiencing post-operative meniscectomy of the left knee. He also commented that, in his opinion, plaintiff would be totally unable to work at that time because she was hardly able to move at all, but he felt that within six months her leg would improve to the point where she would be able to engage in some substantial gainful activity. He further observed that plaintiff appeared poorly motivated and overly dependent on her "walker" aide.

We have carefully read the transcript of the hearing before the Law Judge, Tr. 21–66, held March 16, 1976. Plaintiff testified she was five feet four inches tall, weighed 186 pounds, and had worked continuously as a maid for the same employer until she was no longer able to because of her pain and suffering, and her resultant hospitalization on several occasions due to her manifold conditions. Her testimony was corroborated by her employer who testified as to plaintiff's long tenure of work for her. This further was corroborated by the other witnesses, a step-sister of plaintiff, who was in attendance with her on several occasions at the hospital; and both witnesses said that plaintiff completely was unable to attend to her own work at home, and no longer was able to drive a car. We also have considered the testimony from Dr. George R. Meneely, a certified internist, who was in attendance at the request of the Law Judge as a medical advisor. He had reviewed the medical evidence to date of the hearing, and also heard the testimony of plaintiff and her two witnesses. He made several diagnoses as to plaintiff's condition. He stated (Tr. 52) "medical evidence is just completely lacking for me to render any sort of recommendation or opinion on the period from last August to the present." He further stated (Tr. 53) "it's pretty unusual for someone who worked for twenty-two years on a regular basis, and then suddenly not work for anything than some pretty clear-cut medical reasons.

"And were I a physician, taking a medical history from her, I would be inclined to take her symptomatology seriously."

In further testimony, in answering a question by the Law Judge, the medical advisor stated, Tr. 58: "I would be very surprised if she were able to work. But frankly, I would have no reason—I would have no way of knowing whether it was the orthopedic defect in the knee or whether it were thrombophlebitis or whether it were a combination of them.

"I am inclined to take her statements pretty much at face value with regard to the symptomatology because of the long work history and—documented by her employer—the—it would be wild—it would be the wildest speculation on my part to say what the nature of the impairment was."

We also have examined the transcript in regard to the testimony of the vocational expert, Dr. Richard H. Galloway. Dr. Galloway had examined the medical reports in evidence and heard the testimony of plaintiff and her witnesses. The Law Judge asked the vocational expert a hypothetical question based upon the situation of plaintiff based on the medical records and her testimony in regard to jobs in existence in the national economy with those assumptions. The doctor's answer was as follows, Tr. 61: "With those assumptions, I would feel that there are no jobs existing in sufficient numbers that the claimant could perform." Again, at Tr. 61, the Law Judge asked the vocational expert another hypothetical question based upon the medical evidence as to whether plaintiff would be able to perform sedentary work, assuming that she could work at a job where she could sit or stand as desired, and could lift weights of ten pounds, taking into consideration her education, age and background and work experience. Dr. Galloway's an-

swer was "I would have to say, no, sir, based on those assumptions."

Finally, the Law Judge asked a hypothetical question not based on the true facts of the case, but upon the assumption that plaintiff could do other things, not a part of the record. To this question, the vocational expert naturally gave an affirmative answer.

■ We consider plaintiff has met her burden of proof in showing, virtually uncontradictably, that she indeed is disabled within the meaning of the Act. See *De-Paepe v. Richardson*, 464 F.2d 92 (5th Cir., 1972). We further find that the Secretary has failed to meet his burden by showing that there is some kind of substantial, gainful work plaintiff is able to perform. *Lewis v. Weinberger, supra*; *Dixon v. Weinberger*, 495 F.2d 202 (5th Cir., 1974).

The record plainly shows that plaintiff was, and is, unable to perform any of the jobs at which she previously has been employed. She has continued to have the same disabilities since July 7, 1975, evidenced at the hearing and by further medical evidence. This continues apparently even to the present. *It never was shown by any evidence that plaintiff was able to resume her former occupation; nor, based upon pertinent medical evidence and appropriate hypothetical questions put to the vocational expert, is she able to do any other type of sedentary or menial work.* *Graham v. Mathews*, 422 F.Supp. 950 (D.C.W.D.La., 1976); and *Jackson v. Richardson*, 449 F.2d 1326 (5th Cir., 1971).

Consequently, the motion for summary judgment urged by the Secretary is DENIED, and judgment hereby is entered for plaintiff, remanding the case to the Secretary and directing him to grant plaintiff the disability insurance benefits or supplemental security income to which she is entitled under the Act.