[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 1, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-16149
Non-Argument Calendar

_____

D. C. Docket No. 05-00036-CV-6-WLS

MARVIN L. BATTLE, SR.,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(August 1, 2007)**

Before TJOFLAT, BIRCH and HULL, Circuit Judges.

PER CURIAM:

In this administrative law appeal, we consider (1) whether Marvin Battle met the criteria of 12.05 Mental Impairment Listing in his application for Supplemental Security Income; (2) whether the administrative law judge ("ALJ") properly framed Battle's impairments and limitations in his hypothetical question to the vocational expert ("VE"); and (3), whether the ALJ properly considered the vocational expert's testimony on cross-examination. The ALJ found that Battle did not meet the Listing and was not entitled to supplemental income. We AFFIRM.

## I. BACKGROUND

On 24 January 2003, Battle filed for Supplemental Security Income ("SSI") alleging a disability onset date of 1 November 2001. The Commissioner denied Battle's application initially and on reconsideration. Battle requested and was granted a hearing before an ALJ.

**A. Battle's Testimony Before the ALJ**

During the hearing, Battle testified to the following. He was 38 years old and weighed 230 pounds. Battle attended school to the eleventh grade, could not comprehend the GED questions and received vocational training in landscaping. He needed assistance in reading a newspaper, could write a simple note and, though he struggled with math, could make approximate change. Battle's past work experience included landscaping, hand-packing, and garbage truck driving.

His landscaping duties included digging holes, laying sod, working with irrigation systems, lifting up to 50 pounds, and clearing brush. As a hand-packer, he boxed and carried coils of wire. While working the for the garbage company, he drove the truck and loaded debris.

Battle claimed that stress, worry, and depression caused him to lose weight. He testified that he suffered from high blood pressure and a stroke with continuing complications. He stated that the stroke affected his right side–twisting his face, blurring his vision, causing daily headaches, requiring daily rest, and causing numbness in his arm–which made it difficult to lift things overhead and to hold a pen. Battle claimed that he was nauseated each morning for approximately two hours and was frequently dizzy and tired, which limited his ability to stand and walk. He rated the pain in his head, neck, and right side as a seven out of ten and asserted that knots on his feet and his Human Immunodeficiency Virus ("HIV") status impaired his walking. Battle attributed monthly sores on his tongue, swollen tonsils, and continual colds to his HIV status.

In response to the ALJ's questions, Battle stated that he could occasionally lift 25 to 30 pounds and sit for 30 to 40 minutes without pain. He related that he had problems remembering things and that all of his conditions were getting worse. Battle testified that his depression was severe, including suicidal thoughts, a

3

hospitalization for an attempted suicide in 1997, auditory hallucinations, and poor sleep. Questioned about his past problems with alcohol, Battle responded that he had not abused alcohol for a "couple of years." R at 349.

## B. Medical Evidence

According to evaluations, Battle is HIV positive and Cytomegalovirus ("CMV," a herpes virus) positive. Lee State Prison also noted that Battle suffers from acute rhinitis (inflammation of the nose); and has a history of depression. James State Prison diagnosed Battle with Toxoplasmosis ("Toxo," often found in patients with AIDS and manifests in fever, lymphadenopahty, malaise, and headache) and Bell's Palsy (facial nerve paralysis) in addition.

Evaluations in 2003 by Dr. M. Wheeler and Dr. Kimberly Harbins found that Battle's back, arms, legs, neck, eyes, nose, ears, neurological and psychological functioning were normal. Two Physical Residual Functional Capacity ("RFC") Assessments (one by Dr. Louise Tashjian in 2003 and the other by Dr. Tho Scott in 2004) found that Battle: (1) could occasionally lift 50 pounds; (2) frequently lift 25 pounds; (3) stand and walk about six hours in an eight-hour workday; (4) sit about six hours in a workday; and (5) was unlimited in pushing and pulling. The assessments noted no postural, manipulative, communicative, environmental, or visual limitations. On 16 February 2004, neurologist G. Ashley

Register, M.D. evaluated Battle. In her impressions, she listed HIV status, hypertension, Bell's Palsy, chronic eye tearing, chronic rhinitis and cough, headaches, and depression as Battle's conditions. Dr. Register and Dr. Scott noted no limitations of daily living activities. Dr. Scott and Dr. Thomas Czerlinsky, Ph.D., opined that Battle could manage his own funds. Dr. Register found Battle's neck and abdomen to be normal and his strength to be bilaterally equal.

On 20 February 2004, psychologist Dr. Czerlinsky examined Battle. During the examination, Battle admitted he that had no difficulty performing his personal daily activities (which included household chores, shopping, and reading) and reported no difficulties with sleep or appetite. On the Mini Mental Status Exam, Battle scored 26 out of 30 points, placing him in the mildly impaired range. On the Wechsler Adult Intelligence Scale, Battle fell in the "Borderline range of intellectual functioning" with scores of 81 for verbal IQ, 69 for performance IQ (ability to understand and carry out motor tasks), and 74 for full scale IQ. Id. at 259-60. On the Wide Range Achievement Test-3, Battle placed in the Borderline range in reading with a sixth grade level and in the deficient range in math with a third grade level. On the Bender Visual Motor Gestalt Test, Battle's performance suggested severe impairment in perceptual-motor functioning. Dr. Czerlinsky concluded that: (1) Battle oriented as to person and place but not to time; (2) his

speech and remote memory functions were normal; (3) his recent memory functions were mildly impaired; and (4) he fit in the "Borderline range of intellectual functioning." Id. at 259-61.

On 9 March 2004, psychologist Janet Teleford-Tyler, Ph.D., conducted a non-examining psychiatric review of Battle's records. Section II of the SSA-2506-BK form completed by Dr. Teleford-Tyler provided for consideration of 12.05 Mental Impairment Listing, but she did not make any comments in the 12.05 section. Based on her review, she found:

(1) mild limitations on daily living activities and maintaining social functioning;
(2) moderate limitations on maintaining concentration, persistence, and pace; and
(3) no episodes of decompensation.

Id. at 281. Dr. Teleford-Tyler concluded that the evidence did not establish that psychological disorders had caused more than a minimal limitation of ability to do any basic work activity.

## C. The Hypothetical Questions

The ALJ posed hypothetical questions to the VE. In the first, he asked the VE to assume:

a younger individual with a limited[1] 11th grade education . . . limited

[1]Limited education is generally considered seventh through eleventh grade. 20 C.F.R. § 404.1564(b).

6

to medium  exertional work activities.[2] That would also require a limitation performing work with an SVP of no greater than three.[3] While the individual's concentration may drift from zero to two and one-half hours during an eight-hour workday, if the work is repetitive, routine, or boring, the individual could pay enough attention to details to accomplish all assigned tasks within the same workday.  Even though the individual's pace might be disrupted once or twice a week, the individual will still be able to perform all assigned tasks by the end of the same workday.  Although the individual may be late going to work or returning from scheduled work break by up to 15 minutes per time, and it will occur once or twice a week, the individual will still be able to complete all assigned work tasks within the same workday.  With those restrictions, sir, would an individual be able to perform any of Mr. Battle's past work activities, either as they're described in the Dictionary of Occupational Titles or as they were performed?

R at 355-56 (footnotes added).  The VE answered that all of the past work activities were ruled out except for the position of hand-packer, which is generally performed at a medium exertion level.  The second hypothetical assumed the same individual but limited him to sedentary work activities[4] in terms of standing and walking, limited his lifting and carrying up to 30 pounds once an hour, provided for work breaks of up 60 minutes in the morning and afternoon, and allowed three

---

[2]"Medium exertional work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

[3]SVP is specific vocational preparation.  An SVP of 3 means that the time required is 1 to 3 month to learn the techniques, acquire the necessary information, and develop the facilities needed for average job performance. See Dictionary of Occupational Titles, Appendix C.

[4]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).

to four days of missed work per month. The VE responded that the second hypothetical ruled out Battle's past relevant work and all jobs in the Georgia and national economies because employers would not tolerate the excessive work breaks. Battle asked the VE to elaborate on an employer's tolerance of being fifteen minutes late to work once or twice a week. He responded it was a "borderline, gray area" with employers first accepting but then having "grave reservations" about retaining the employee; he added that, "after a continuation of that, [such a schedule] would no longer be acceptable [to employers]." Id. at 358.

### D. Procedural Posture

The ALJ found that Battle was not entitled to SSI benefits. In summarizing the evidence of the case, the ALJ emphasized the lack of medical evidence of serious physical ailments and limitations and noted Battle's IQ scores and limited credibility based on his inconsistent statements regarding his medical and physical conditions. The ALJ applied a five-step sequential evaluation to determine whether Battle was entitled to SSI.

The ALJ first determined that Battle had not engaged in substantial gainful activity since 24 January 2003. Second, the ALJ found that Battle's HIV positive status, adjustment disorder with depressed mood, and borderline intellectual functioning qualified as severe impairments. Next, the ALJ concluded that these

8

impairments did not meet or medically equal, either singly or in combination, one of the Listings. The ALJ applied the "special procedure" contemplated by 20 CFR §§ 404.1520a and 416.920a that requires him to consider the severity of the mental impairments. He found that Battle did not meet the criteria because his daily living activities and social functioning were not limited; his concentration, persistence, and pace were only moderately limited; and no evidence of decompensation or any significant functional limitations on his ability to work existed. Additionally, the ALJ found that the evidence of Bell's Palsy, mini-stroke, alcohol abuse, hypertension, elbow/hand pain, lacerations, and a broken finger[5] did not constitute severe impairments and that Battle's allegations of pain were not credible. The ALJ also determined that Battle's impairments did not prevent him from performing his past relevant work.

The Appeals Council denied review. Battle then filed a complaint against the Commissioner. The district court adopted the magistrate judge's report and recommendations and affirmed the decision of the Commissioner.

## II. DISCUSSION

Battle now brings an appeal, presenting three issues for our consideration. First, we consider whether Battle met the criteria of 12.05 Mental Impairment

---

[5]This is a mistake of fact. Battle did not break his finger. The medical record that indicated a broken finger was mistakenly submitted and is for another patient.

Listing. Second, we examine whether the ALJ properly framed Battle's impairments and limitations in his hypothetical question to the VE. Third, we determine whether the ALJ properly considered the VE's testimony on cross-examination.

**A. Meeting the Mental Impairment Listing**

On appeal, Battle argues that the ALJ failed to consider whether his impairments meet the requirements of the 12.05 Listing for Mental Impairment. Battle contends that the ALJ is required to use the lowest I.Q. score and that his mental retardation is presumed to be constant throughout life. (Id. at 16). Battle asserts that his performance IQ score of 69 falls within the range required to meet 12.05(C) Listing. Since the ALJ's decision did not specifically reject the IQ score, mention the 12.05 Listing, or explain why the Listing was not met, Battle argues that the ALJ did not evaluate his IQ score and the 12.05 Listing as he is legally required to do. Battle concludes that a claimant whose impairment meets a Listing is disabled regardless of the fact he worked in the past; thus, the ALJ should have found him disabled at the third step of the sequential evaluation process.

We review an ALJ's decision to determine whether it is supported by substantial evidence and based on proper legal standards. See Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is defined as more

10

than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). In conducting this review, we may not reweigh the evidence or substitute its judgment for that of the ALJ. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Further, we scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence. Id. With respect to the Commissioner's legal conclusions, however, our review is de novo. Lewis v. Barnhart, 285 F.3d 1329, 1330 (11th Cir. 2002).

The ALJ applied the appropriate sequential analysis test to determine whether Battle was entitled supplemental income:

1. Is the individual performing gainful activity;
2. Does she have a serious impairment;
3. Does she have a serious impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;
4. Can she perform her past relevant work; and
5. Based on her age, education, and work experience can she perform work of the sort found in the national economy.

Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).

At the third step of the sequential analysis, the claimant must show that his impairment meets or equals a Listing. Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir. 1991). "To 'meet' a Listing, a claimant must have a diagnosis included in the

11

Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (per curiam) (citation omitted). Section 12.05 defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. Pt. 404, Subpt. P, App. 1§ 12.05. The elements required by Section 12.05 are as follows:

> A. Mental incapacity evidenced by dependence upon others for personal needs . . . and inability to following directions . . .; or
> B. A valid verbal, performance, or full scale IQ of 59 or less; or
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation.

Id. When considering the 12.05 Listing, we have held that "a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

The ALJ found, according to medical diagnosis, that Battle fit into the Borderline range of intellectual functioning. Battle did not show deficits in

12

adaptive behavior. He performed daily activities independently and did not meet element A. His IQ scores were too high for element B but met C and D. He found that the record did not demonstrate a physical impairment sufficient to element C. For element D, the medical evaluation by Dr. Teleford-Tyler found only mild–rather than marked– limitations on daily living and social functioning. Dr. Teleford-Tyler also found only moderate limitation–rather than marked difficulty–in maintaining concentration, persistence, and pace. Finally, the doctor found no episodes of decompensation. As a result, Battle failed to meet the 12.05 Listing's element D.

Upon review of the record and the parties' briefs, we discern no error as to this issue. The ALJ's conclusion was based upon proper legal standards and substantial evidence supports the ALJ's conclusion that Battle did not meet the 12.05 Listing.

The record shows that Battle failed to meet his 12.05 Listing burdens because the evidence did not show (1) deficits in adaptive functioning; (2) significant work-related limitations of function; (3) marked restrictions of daily living activities; (4) marked difficulties in maintaining social functioning; (5) marked difficulties in maintaining concentration, persistence or pace; or (6) repeated episodes of decompensation. Drs. Tasjian, Scott, and Teleford-Tyler

13

found no significant work-related limitation of function. Drs. Register, Czerlinsky, Scott, and Teleford-Tyler found no limitations in Battle's daily living activities. Mr. Hurn rated Battle's GAF as 70 which indicates that Battle could generally function well in social, occupational, and school settings. Dr. Teleford-Tyler found only mild limitations in social functioning; moderate limitations on concentration, persistence, and pace; and no episodes of decompensation. Battle did not present any objective evidence to counter these opinions. Therefore, substantial evidence supports the ALJ's conclusion that Battle did not meet the 12.05 Listing criteria.

## B. The ALJ's Hypothetical Question to the VE

On appeal, Battle argues that substantial evidence does not support the ALJ's finding that Battle can return to his past relevant work because the ALJ improperly framed his hypothetical questions to the VE. Battle asserts that the ALJ erroneously told the VE that Battle's limitations would not interfere with his ability to complete his work instead of asking him the effect of Battle's limitations on his ability to work and complete his assigned work within the workday. Battle contends that the hypothetical without evidentiary support included the conclusion that Battle could "accomplish all assigned tasks" and "perform all assigned tasks" within the workday despite his concentration, pace, and absence from work

14

limitations. Battle also notes factual errors in the hypothetical, which characterized his education as limited 11th grade and did not note his special education or 6th grade reading level limitations.

For this issue, we must determine whether substantial evidence supports the ALJ's determination that Battle failed to meet the fourth criteria of the sequential evaluation process.

At the fourth step, the claimant bears the burden of demonstrating that he cannot return to his past relevant work. Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990) (citation omitted). The ALJ assesses the claimant's RFC to determine whether the claimant can perform past relevant work despite his impairment. See 20 C.F.R. §§ 404.1520(f), 416.920(f); see also Crayton, 120 F.3d at 1219. To support a conclusion that the claimant is able to return to his past relevant work, the ALJ must consider all the duties of that work and evaluate the claimant's ability to perform them in spite of his impairments. See Lucas, 918 F.2d at 1574. The regulations permit an ALJ to consider a VE's opinion when making this determination. 20 C.F.R. § 404.1560(b)(2). "In order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d at 1227 (citation omitted). Errors may be harmless if they do not

prejudice the claimant.  See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).

When viewed deferentially, the medical evidence supports the ALJ's limitation finding that, despite drifting concentration, disrupted pace, and tardiness, Battle would be able to complete and perform his assigned tasks.  None of the medical evidence indicates that Battle would not be able to complete his work within a workday.  Moreover, the ALJ's limitation takes into account Dr. Teleford-Tyler's findings of (1) no significant limitations in Battle's ability to maintain attention and concentration for extended periods, to sustain an ordinary routine, and to work in coordination with or proximity to others without being distracted and (2) limitations of only moderate severity in Battle's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and unreasonable number and length of rest periods.  Because the ALJ's hypothetical is supported by substantial evidence, it does not undermine the propriety of the ALJ's determination that Battle failed the fourth step.

It is undisputed that the ALJ's hypothetical posed an individual with a limited education (seventh to 11th grade.)   Battle, however, has third grade math skills, sixth grade reading skills and a 69 performance IQ.  Even though the hypothetical made Battle seem more educated than he actually is, this mistake is harmless because it did not affect the VE's conclusion.  See Diorio, 721 F.2d at

16

The regulations define a sixth grade or less level of education as "marginal" and state that an individual with a marginal education has "ability in reasoning, arithmetic, and language skills which are needed to do simple unskilled types of jobs." 20 C.F.R. § 404.1564(b)(2). Battle's previous work experience and the evidence from Dr. Register, Dr. Czerlinsky, and Dr. Teleford-Tyler show that he was capable of performing at this marginal level. The only job identified by the VE in response to the hypothetical was the unskilled job of hand-packer. Because this position is unskilled, it can be performed by someone with the marginal skill level that Battle possessed. As a result, the ALJ's failure to characterize Battle's education level correctly in his hypothetical question did not prejudice Battle.

Because substantial evidence supports the ALJ's finding that Battle could complete his work and because the errors related to Battle's educational level were harmless, the ALJ's hypothetical question did not undermine the validity of the VE's testimony in response to the hypothetical. Therefore, the ALJ could rely on the VE's statement that Battle could return to work as hand-packer.

**C. The VE's Testimony on Cross-Examination**

Battle asserts that no evidence supports the ALJ's conclusion that he can return to his past work. He bases this contention on the fact that the VE testified on cross-examination that an employer would not likely tolerate his being 15

17

minutes late once or twice a week. Battle asserts that this is an unresolved evidentiary conflict with the VE's first testimony that he could work as a hand-packer. Even if the ALJ did not accept the VE's testimony on cross-examination, Battle argues that the ALJ must state the weight he gave the VE's cross-examination testimony and the reason he disregarded it within his decision under Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (per curiam).

For this issue, we consider whether substantial evidence supports the ALJ's determination that Battle failed to meet the fourth step and whether Battle met his the burden of demonstrating that he cannot return to his past relevant work. See Lucas, 918 F.2d at 1571. The ALJ assesses the claimant's RFC to determine whether the claimant can perform past relevant work despite his impairment. See 20 C.F.R. §§ 404.1520(f), 416.920(f); see also Crayton, 120 F.3d at 1219. To support a conclusion that the claimant is able to return to his past relevant work, the ALJ must consider all the duties of that work and evaluate the claimant's ability to perform them in spite of his impairments. Lucas, 918 F.2d at 1574. When deciding the case, it is the ALJ's duty to weigh the evidence and testimony, to resolve the conflicts in the evidence and testimony, and determine whether Battle with his RFC can return to his past relevant work, and we will not substitute our judgment for the ALJ's. See Martin, 894 F.2d at 1529; see also Jackson v.

18

Richardson, 449 F.2d 1326, 1330 (11th Cir. 1971) (reversing based on contradictions within the VE's testimony that undermined the reasonableness of the ALJ's decision).

We have recognized that the ability to regularly attend to work is integral to being able to perform a job. See Rivas v. Weinberger, 475 F.2d 255, 258 (5th Cir. 1973). When assessing whether a claimant can obtain and hold employment, it is proper to consider whether mental-psychological defects impact an individual's ability to hold a position. Dodsworth v. Celebreeze, 349 F.2d 312, 315 (5th 1965) (remanding to determine whether a claimant's mental condition made it improbable that he could obtain and hold gainful employment); see also Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remanding to determine mental defects and physical impairments effect on ability to perform gainful employment); Broussard v. Gardner, 382 F.2d 278, 279 (5th Cir. 1967) (holding a claimant failed to show that it was improbable that he could obtain and hold gainful employment).

Battle elicited the VE's opinion about how his tardiness limitation would affect his ability to hold employment. Contrary to Battle's characterization, the VE's cross-examination testimony does not directly contradict the VE's earlier testimony that Battle could return to work as a hand-packer. The VE testified that the effect of Battle's 15 minute tardiness was a gray, borderline area, indicating

19

that employers may or may not tolerate the tardiness. This appeal does not present the situation where a party converts the VE to its opinion causing his testimony to become contradictory. Jackson v. Richardson, 449 F.2d 1326, 1330 (11th Cir. 1971). At the hearing and on subsequent review, Battle has not presented any evidence that employers would not tolerate his tardiness.

While discussion of the VE's cross-examination testimony would have been preferable, Hudson does not require that the ALJ address the testimony as specifically as Battle contends in his brief. 755 F.2d at 786. In Hudson, we remanded because ALJ failed to consider the claimant's impairments in combination and did not make clear the weight she accorded the evidence. Id. at 785-86. Here, the ALJ considered Battle's impairments in combination and discussed the weight he gave the evidence and why he discredited evidence. Explicit weighing of nonconclusive testimony is not required. See id. at 786. Accordingly, we conclude that substantial evidence supports the ALJ's determination.

### III. CONCLUSION

Because Battle did not meet the Mental Impairment Listing, because no prejudicial error marred the ALJ's hypothetical question to the VE, and because substantial evidence supports the ALJ's consideration of the VE"s testimony on

20

cross-examination , we **AFFIRM** the Social Security Administration's denial of

SSI benefits.