United States Court of Appeals,

Eleventh Circuit.

No. 96-6002.

Sterling CRAYTON, on behalf of himself and all others similarly situated, et al., Plaintiffs-Appellants,

v.

John J. CALLAHAN, Acting Commissioner of the Social Security Administration, et al., Defendants-Appellees.

Sept. 3, 1997.

Appeal from the United States District Court for the Northern District of Alabama. (No. 94-N-1689-S), Edwin Nelson, Judge.

Before BIRCH, Circuit Judge, RONEY, Senior Circuit Judge, and O'KELLEY[*], Senior District Judge.

RONEY, Senior Circuit Judge:

This is an appeal from the district court's dismissal of a class action brought by mentally disabled persons who alleged that the defendants, the Commissioner of Social Security and Alabama's Division of Disability Determination ("DDD"), failed to properly process their disability claims in that the persons considering a claim of disability do not develop evidence of mental disability, even though that is not a basis upon which the claim has been made.

Plaintiffs, ten persons with limited mental capacity, on behalf of themselves and others similarly situated, claimed defendants violated the Social Security Act, section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Due Process Clause of the Fourteenth Amendment. The district court dismissed these claims for lack of subject matter jurisdiction. The court held that plaintiffs failed to exhaust their administrative remedies and their claims did not satisfy the elements necessary to require waiver of the exhaustion requirement. We affirm.

In July 1994, claimants filed their complaint, alleging that the state agency's practice operated to deny benefits to persons with mental disabilities. Plaintiffs sought certification of a

[*]Honorable William C. O'Kelley, Senior U.S. District Judge for the Northern District of Georgia, sitting by designation.

class; a judgment declaring that the process at the state level, as then administered, violated federal law and the Fourteenth Amendment's due process clause; preliminary and permanent injunctions enjoining the improper practices; and a writ of mandamus (in effect) directing defendants to perform the non-discretionary duties owed plaintiffs under applicable law. Defendants opposed plaintiffs' motion for class certification and a hearing was held. The defendants filed motions to dismiss the complaint for lack of subject matter jurisdiction. After defendants filed their motions, the district court stayed discovery and deferred ruling on class certification pending the decision on the motions to dismiss.

On May 3, 1995, the district court dismissed all claims against the Secretary for lack of jurisdiction, and dismissed the claims brought under the Social Security Act and the Due Process Clause against the state defendants, leaving only claims against the state that were predicated on section 504 of the Rehabilitation Act. After the parties briefed the issue, the district court dismissed the remaining claims for lack of jurisdiction in an Order entered in October 1995. Because of the court's disposition of the jurisdictional issue, it never ruled upon class certification.

Plaintiffs allege that they should have been considered for benefits under two similar programs administered by the Social Security Administration (SSA). The Social Security Disability Insurance program (SSDI) pays benefits to persons who have contributed to the program and who are determined to be "disabled" due to a physical and/or mental impairment. Title II, Social Security Act, 49 Stat. 622, as amended. 42 U.S.C. § 401 *et seq.* The Supplemental Security Income program (SSI) extends such benefits to indigent disabled persons. Title XVI, Social Security Act, 86 Stat. 1465, as amended, 42 U.S.C. § 1381 *et seq.* Both Titles define "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of less than 12 months...." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Under express statutory authority, 42 U.S.C. § 405(a), the Commissioner has promulgated detailed regulations governing eligibility for SSDI and SSI benefits. 20 C.F.R. Part

2

404, Subpart P (SSDI); 20 C.F.R. Part 416, Subpart I(SSI). Both programs follow the same five-step "sequential evaluation" process to determine whether a claimant is disabled. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c; *compare also* 20 C.F.R. § 404.1520 *with* 20 C.F.R. § 416.920.

The disability examiner determines *first,* whether the claimant is engaged in "substantial gainful activity." If not, the examiner decides *second* whether the claimant's condition or impairment is "severe," *i.e.,* whether it significantly limits claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, the examiner decides at the *third* step whether the claimant's impairment meets or equals the severity of the specified impairments acknowledged by SSA to be of sufficient severity to preclude any gainful work activity (the "Listings"), Subpart P, Appendix 1 of the Regulations, 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.

If the claimant has a severe impairment that does not equal or meet the severity of a listed impairment, the examiner proceeds to the *fourth* step and assesses the claimant's "residual functional capacity" ("RFC"). This assessment measures whether a claimant can perform past relevant work despite his or her impairment. If the claimant is unable to do past relevant work, the examiner proceeds to the *fifth* and final step of the evaluation process to determine whether in light of RFC, age, education and work experience the claimant can perform other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Plaintiffs' contentions in this case concern the third step in the process, *i.e.,* whether claimant's impairment meets or equals the impairment in the Listings. Specifically, plaintiffs challenge the DDD's failure to determine whether the mental retardation Listings apply to them. 20 C.F.R. Part 404, Subpart P, Appendix 1 at § 12.05 (Mental Retardation and Autism).

3

To be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22.

Generally, the claimant meets the criteria for presumptive disability under section 12.05(b) when the claimant presents a valid IQ score of 59 or less, or under section 12.05(c) when the claimant presents a valid IQ score of 60 through 70 inclusive, and when the claimant presents evidence of an additional mental or physical impairment significantly affecting claimant's ability to work. *See Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir.1992) (a valid IQ score need not be conclusive of mental retardation, where the IQ score is inconsistent with other evidence in the record concerning the claimant's daily activities and behavior).

In addition to describing plaintiffs generally as persons with limited mental capacity, the complaint alleges facts about each of the named plaintiffs, including their ages and their limited educational background and work experience; the dates they applied for and were denied benefits at the agency level; the IQ levels of some of the plaintiffs and their physical disabilities where relevant.

It appears plaintiffs' claims were not based on limited mental capacity. The complaint does not allege which of the above facts, if any, were presented to the agency. Plaintiffs fault the state disability examiners for failing to develop evidence *sua sponte* of limited mental capacity, even when such a claim is not made, but when there is some indication in the record that the claimant has a limited mental capacity.

Specifically, plaintiffs allege:

Defendants do not request information from disability applicants which would show that limited mental capacity is likely. Defendants fail and refuse to obtain consultative exams for I.Q. testing even when mental retardation is suggested by evidence of record (such as an adult having only a fourth grade education). Defendants do not obtain school records which would show that limitation of mental capacity was evident early in applicant's life. This failure to develop is particularly important because people with limited mental capacities often do not allege this deficiency as a basis for their disability claims, either because they do not appreciate the extent of their mental limitation or because they do not realize that their mental limitation can constitute a basis for disability. Defendants also deny benefits in cases

4

where the record includes a valid I.Q. score of 60 or less or a valid I.Q. score between 61 to 70 and an additional significant work-related impairment.

We presume the truth of all factual allegations in the complaint and review defendants' facial challenge to jurisdiction *de novo.* The motion to dismiss is appropriately granted if the plaintiffs failed to allege an element necessary for subject matter jurisdiction. *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir.1993).

Under 42 U.S.C. § 405(g), the section which gives the federal court jurisdiction of claims under this statute, a claimant must satisfy two jurisdictional prerequisites to obtain judicial review of an agency decision. *First,* the individual must have presented a claim for benefits to the Secretary. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Second,* the claimant must have exhausted the administrative remedies.

This means claimant must have completed each of the steps of the administrative review process unless exhaustion has been waived. Claimants in this case were pursuing but had not exhausted their administrative remedies at the time their complaint was filed, so in order for their claims to be heard, exhaustion must be waived. The district court in this case, as did the courts in other cases cited by the parties, applied a three-part test to determine whether waiver is applicable: (1) are the issues entirely collateral to the claim for benefits; (2) would failure to waive cause irreparable injury; and (3) would exhaustion be futile. *Bowen v. City of New York,* 476 U.S. 467, 483, 106 S.Ct. 2022, 2031-32, 90 L.Ed.2d 462 (1986). The district court based its dismissal on plaintiffs' failure to establish two of these three elements: irreparable injury and futility.

In arguing that the district court should have applied the doctrine of waiver to assert jurisdiction in this case, plaintiffs rely upon the Supreme Court's analysis of waiver in three cases, *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); and *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). Because of the context within which the principles were developed in these cases, however, these cases do not support a required waiver of the exhaustion requirement in this case.

5

In *Salfi,* a widow and her child brought a class action challenging the constitutionality of certain Social Security Administration procedures after she was denied benefits both initially and on reconsideration at the regional level. The Court held that the Secretary's failure to challenge the sufficiency of plaintiffs' allegations of exhaustion amounted to a determination by the Secretary that for purposes of this litigation, the reconsideration determination was "final," and thereby satisfied the requirements for judicial review under section 405(g). 422 U.S. at 767, 95 S.Ct. at 2467.

In reaching this conclusion, the Court observed that the statutory scheme, which determines when an agency decision is final, allows the Secretary to determine what exhaustion requirement would best "serve his own interests in effective and efficient administration." 422 U.S. at 766, 95 S.Ct. at 2467. Thus, it is within the Secretary's province to waive the exhaustion requirement. This may be done by failing to challenge jurisdiction based on failure to exhaust. The Secretary has not chosen to do that in this case.

In *Mathews v. Eldridge,* when plaintiff's disability benefits were terminated, plaintiff did not seek agency reconsideration but instead brought an action in federal district court alleging that termination of his benefits without a hearing violated his constitutional due process rights. The Supreme Court predicated its holding that judicial waiver of exhaustion was appropriate on the fact that plaintiff challenged the *constitutional validity* of administrative procedures, and noted the importance of that distinction:

> A claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing [so that] denying Eldridge's substantive claim "for other reasons" or upholding it "under other provisions" at the post-termination stage, ... would not answer his constitutional challenge.

424 U.S. at 331-32, 96 S.Ct. at 900.

Plaintiffs' due process claim is not based on the failure to have a hearing, but on how that hearing was handled, normal subject matter for the regular administrative exhaustion requirement.

In *Bowen v. City of New York,* plaintiffs brought a class action alleging that an internal policy of the Secretary of Health and Human Services had the effect of denying disability benefits to numerous claimants who may have been entitled to them. Suit was brought on behalf of state

6

residents who had applied for or been receiving Social Security benefits and who had been found by the agency to have a severe mental impairment, but were denied benefits based on the determination that claimants were capable of substantial gainful employment. After a seven-day trial, the district court held, among other things, that the agency had followed a covert policy as alleged by plaintiffs and that such policy was illegal. The court noted that the evidence of the "fixed clandestine policy against those with mental illness" was overwhelming. 476 U.S. at 475, 106 S.Ct. at 2027 (citations omitted).

The district court certified a class, including in it claimants who had not exhausted their administrative remedies. The court clearly had jurisdiction of the case involving plaintiffs with exhausted claims. It was only the inclusion in this class with those claimants who had not exhausted that the government appealed. The trial court's findings on the merits of plaintiffs' case were unchallenged. The only question was whether those claimants who had not exhausted their administrative remedies should be included in the class for which relief would be granted. Thus, the Court had before it a record fully developed by the plaintiffs who had exhausted upon which to base its decision. Under such circumstances, it would be nonsensical to require claimants to exhaust their remedies when the outcome was a foregone conclusion.

In making its decision, the *Bowen* Court looked at several factors, the first two of which are factors the Court discussed previously in *Eldridge:* first, that the constitutional challenge brought was entirely collateral to a substantive claim of entitlement; and second, that claimants would suffer irreparable injury because their claim rested on the proposition that full relief could not be obtained at a post-deprivation hearing. The Court said it must consider whether application of the exhaustion doctrine was practical, and whether it was consistent with the requirement's underlying policies. The Court explained that

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

422 U.S. at 765, 106 S.Ct. at 2467.

7

The holdings in each of these cases is consistent with the stated principles underlying exhaustion. The agency may always waive the exhaustion requirement. It may be held to have done so by failing to challenge the sufficiency of the allegations in plaintiffs' complaint, as it did in *Salfi*. Exhaustion may be excused when the only contested issue is constitutional, collateral to the consideration of claimant's claim, and its resolution therefore falls outside the agency's authority as in *Eldridge*. Exhaustion may be impractical and inconsistent with the exhaustion principles when a judicial determination has been made that the agency's procedure is illegal.

Plaintiffs also cited cases from other circuits that like plaintiffs go straight to application of the three-part test, particularly a line of cases decided by the Eighth Circuit, including *Titus v. Sullivan,* 4 F.3d 590 (8th Cir.1993); *Schoolcraft v. Sullivan,* 971 F.2d 81 (8th Cir.1992), *cert. denied sub nom., Shalala v. Schoolcraft,* 502 U.S. 1081, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994); and *Mental Health Ass'n of Minnesota v. Heckler,* 720 F.2d 965 (8th Cir.1983). We are unpersuaded as to the correctness of these cases or that they require a waiver in this case.

We hold only that in this case both the practical considerations and the guiding principles of exhaustion dictate that these claimants should make their claims to the agency and exhaust their administrative remedies before the federal court would have jurisdiction to review the agency decision.

It appears from the language of the district court's memorandum opinions that its dismissal was with prejudice. We modify the judgment to the extent that the dismissal of the claims of the individual plaintiffs is without prejudice, so that they may pursue administrative remedies and then return to federal court if appropriate.

AFFIRMED AS MODIFIED.