[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 8, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-17148
Non-Argument Calendar

_____

D. C. Docket No. 04-00043-CV-HL-6

JACKIE K. HUMPHRIES,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(June 8, 2006)**

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Jackie Humphries appeals from the district court's judgment affirming the

denial of her application for disability benefits pursuant to 42 U.S.C. § 405(g). On appeal, Humphries argues that the Administrative Law Judge ("ALJ") erred by finding that her impairments do not meet or equal the Listing of Impairments under section 12.05(C), 20 C.F.R. Subpt. D, App. 1, Pt. A, and finding that she could perform other work in the national economy, which, she argues, resulted from the ALJ's failure to properly weigh Humphries' treating doctors' opinions.

Our review of the Commissioner's decision is limited to whether substantial evidence supports the decision and whether correct legal standards were applied. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam). "Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Id.* at 1158-59.

"The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that she is disabled." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The first three steps require the claimant to prove that (1) she is not engaged in substantial gainful activity, (2) has a severe impairment or combination of impairments, and (3) her impairment or

combination of impairments meets or equals those contained in a list of impairments. *Id.* If the claimant successfully demonstrates the third step, she is automatically found disabled; otherwise, she must show that (4) she is unable to perform her past relevant work. *Id.* If the claimant can demonstrate the fourth step, then the burden shifts to the Commissioner to show that (5) "there is other work available in significant numbers in the national economy that the claimant is able to perform." *Id.* A claimant must prove she is unable to perform those other jobs in order to be found disabled. *Id.*

Based on the medical evidence, the ALJ found that Humphries had a severe combination of impairments–fibromyalgia, degenerative disc disease of the lumbar spine, dysthymic disorder, and borderline intellectual functioning. However, the ALJ determined that none of these impairments met or equaled those contained in the list of impairments. The ALJ also found Humphries' allegations regarding her limitations not totally credible. Concerning Humphries' ability to work, the ALJ found that Humphries was unable to perform her past relevant work, but had the residual functional capacity ("RFC") to perform a significant range of light work.

First, Humphries asserts that the ALJ erred in failing to offer any reasons why her impairments did not satisfy the requirements of Listing 12.05(C), because the ALJ did not reject her IQ scores and found that she had other impairments.

Humphries further asserts that the ALJ erred in assessing her functional capacity after accepting her IQ scores.

Humphries essentially challenges the ALJ's determination of the third step–whether Humphries' impairments met or equaled a listed impairment. "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson*, 284 F.3d at 1224 (citing 20 C.F.R. § 404.1525(a)-(d)). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Id.* (quoting 20 C.F.R. § 404.1526(a)).

Listing 12.05, the listing category for mental retardation, begins with an introductory paragraph, which states that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A §12.05. The listing further provides that the "required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." *Id.* Subsection C requires a claimant demonstrate "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental

4

impairment imposing an additional and significant work-related limitation of function." *Id.* § 12.05(C). We have held that to be considered for disability benefits under Listing 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning, (2) have deficits in adaptive functioning, and (3) have manifested those deficits before age 22. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). In addition, for presumptive disability under Listing 12.05(C), the claimant must have a valid IQ score of 60 through 70 inclusive, and an additional mental or physical impairment significantly affecting the claimant's ability to work. *Id.* at 1219-20.

Here, substantial evidence supports the ALJ's finding that Humphries' impairments do not meet or equal the Listing 12.05(C) because, despite her IQ of 65, she does not have deficits in her adaptive functioning. Humphries worked in a school cafeteria for 21 years, and served as the manager for about 15 years. As manager, Humphries gave the five employees under her supervision daily lists of tasks, ensured breakfast and lunch were prepared on time, and ordered groceries for the cafeteria.

Second, Humphries argues that the ALJ improperly disregarded and misconstrued Humphries' treating doctors' (Drs. Arwood and McDuffie) opinions. She claims that the ALJ improperly relied on the opinions of non-examining

physicians in determining her residual functional capacity, and failed to state what weight she gave to the opinion of Humphries' psychologist, Dr. Willers. Humphries also argues that the ALJ did not consider Humphries' own description of her limitations.

In determining whether a claimant is disabled for purposes of the Social Security Act, the ALJ is required to include an assessment of the claimant's RFC to determine whether the claimant can do her past relevant work or can make an adjustment to other work. 20 C.F.R. § 404.1520(e). The RFC assessment is based on all the relevant medical and other evidence in the case record. *Id.* The ALJ must state with particularity the weight given different medical opinions and the reasons for the weight given, and failure to do so is reversible error. *See Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam).

Testimony or an opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). We have found "good cause" to exist where (1) the opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure

6

to do so is reversible error." *Id.*

The ALJ must make credibility determinations when a claimant attempts to prove disability through her own testimony of subjective symptoms such as pain using a three-part "pain standard" test. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). The pain standard test requires (1) an underlying medical condition and either (2) medical evidence confirming the alleged pain's severity or (3) evidence showing that the underlying medical condition is severe enough to reasonably expect that it could give rise to the alleged pain. *Id.* A claimant's subjective testimony of pain or other symptoms, when supported by objective medical evidence satisfying the requirements of the pain standard test, is sufficient to support a finding of disability. *Id.* If an ALJ decides to discredit such testimony, she must give "explicit and adequate reasons for doing so," and failure to provide such reasons requires that the testimony be accepted as true. *Id.*

Here, substantial evidence supports the ALJ's finding that the opinions of Drs. Arwood, McDuffie, and Willers were inconsistent with other evidence in the record, and thus entitled to less weight. Although their opinions that Humphries was unable to engage in employment were reasonable assessments at the time they were made, they were not consistent with more recent evidence suggesting that her condition had improved with proper medical treatment, exercise, and medication.

7

Further, applying the pain standard, the ALJ properly considered Humphries' assessment of her pain level and found that it was not credible to the degree alleged because the objective evidence did not support her allegations regarding the severity of the pain. Therefore, substantial evidence supports the ALJ's findings with regard to the weight given to the medical evidence and Humphries' subjective complaints. Finally, Humphries argues that the ALJ erred in finding that she could perform other work in the national economy because the vocational expert ("VE") testified that her IQ score is too low to perform the jobs the VE identified in response to the ALJ's hypothetical. In step five of the disability analysis, the Commissioner has the burden of proving "there is other work in the national economy that the claimant can perform." *Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). "If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. If the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled." *Phillips v. Barnhart*, 357 F.3d 1237, 1239 (11th Cir. 2004). To determine whether the claimant has the ability to adjust, the ALJ can use a VE. *Id.* at 1240. When using a VE, the ALJ must pose hypothetical questions to the VE to determine whether someone with the same limitations as the claimant will be able to secure employment in the national economy. *Id.* That hypothetical question must include

8

"all of the claimant's impairments." *Wilson*, 284 F.3d at 1227.

Here, the VE was asked two hypothetical questions by the ALJ. Humphries' counsel also asked the VE hypothetical questions. The VE identified jobs consistent with the characteristics of the individual described in the ALJ's hypothetical, and the hypothetical included all of Humphries' credible physical and mental limitations. Even when asked by Humphries' counsel whether someone with an IQ in the bottom ten percent of the population would be precluded from performing the jobs the VE identified, the VE responded that the hypothetical person could do the jobs mentioned.

Having thoroughly reviewed the records of the administrative proceedings, the proceedings in the district court, and upon consideration of the parties' briefs, we find no reversible error.

**AFFIRMED.**