[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 23, 2007
THOMAS K. KAHN
CLERK

No. 06-15604
Non-Argument Calendar

_____

D. C. Docket No. 05-00050-CV-HL-6

TINA L. FREEMAN,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(March 23, 2007)**

Before TJOFLAT, BIRCH and MARCUS, Circuit Judges.

PER CURIAM:

Tina Freeman appeals the district court's decision affirming the

Commissioner's denial of disability insurance benefits, 42 U.S.C. § 405(g), and supplemental security income benefits, 42 U.S.C. § 1383(c)(3). Freeman contends that the Administrative Law Judge ("ALJ") erred (1) by not adequately assessing her functional abilities; (2) in weighing the opinions of the physicians and a physical therapist; and (3) in finding that her mental impairments were not severe.

Our task in considering this appeal is to determine whether the ALJ's decision is supported by substantial evidence and the application of the correct legal standards. See Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is defined as more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). We may not reweigh the evidence or substitute our own judgment for that of the ALJ, even if we should find that the evidence preponderates against the ALJ's decision. Martin v. Sullivan, 67 F.3d 1553, 1529 (11th Cir. 1990).

The Social Security regulations prescribe the following five-step "sequential evaluation" process to determine whether a claimant is disabled. (1) The disability examiner determines whether the claimant is engaged in "substantial gainful activity." (2) If she is not, the examiner decides whether the claimant's condition

or impairment is "severe," i.e., whether it significantly limits the claimant's physical or mental ability to do basic work activities. (3) If it does, the examiner decides whether the claimant's impairment meets or equals the severity of the specified impairments in the Listing of Impairments ("Listing"), thereby precluding any gainful work activity. (4) If the claimant has a severe impairment that does not meet or equal the severity of an impairment in the Listing, the examiner assesses the claimant's "residual functional capacity" ("RFC"), which measures whether the claimant can perform past relevant work despite the impairment. (5) If the claimant is unable to do past relevant work, the examiner determines whether, in light of the RFC, age, education, and work experience, the claimant can perform other work. See Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). With these principles at hand, we turn to Freeman's contentions.

Freeman contends that the ALJ failed to identify her functional limitations and work-related abilities on a function-by-function basis. She submits that the ALJ failed to make sufficiently specific findings regarding her abilities. In addition, the ALJ erred by posing hypothetical individuals to the vocational expert ("VE") that had no limitations on standing, walking, or sitting.

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess . . . her work-related abilities on a function by

3

function basis . . . . Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184. The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence. Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). In addition, as we have noted:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

Walker v. Bowen, 826 F.2d 996, 1000 (11th Cir. 1987). In addition, "light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251.

While the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability Freeman claimed. Only after the he determined that she failed to carry her burden of showing that she had become disabled from performing any of her

work-related activities did he state that she could perform light exertional activity. Therefore, the ALJ complied with SSR 96-8p by considering Freeman's functional limitations and restrictions and, only after he found none, proceeding to express her residual functional limitations in terms of exertional levels. Furthermore, the ALJ's analysis of the evidence and statement that Freeman could perform light work indicated how much work-related activity she could perform because "light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. The ALJ also told the VE that the hypothetical individuals they were discussing were limited to light exertional activity. Therefore, the ALJ's hypotheticals did have limitations on sitting, standing, and walking. In sum, the ALJ adequately analyzed and described Freeman's functional capacity.

Freeman contends that the ALJ improperly rejected the opinions of Dr. James Goss, Dr. Bradley Walter, and Earl Folsom, a physical therapist. An ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Syrock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). "The testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Crawford v. Comm'r of Soc. Security, 363 F.3d 1155, 1159 (11th Cir. 2004). "A treating physician's

report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." Id. (quotation omitted). Two factors that may weigh in favor of discounting a treating physician's opinion are when the opinion is inconsistent with the physician's own treatment notes and when the opinion appears to be based primarily on the claimant's subjective complaints of pain. Id. The opinion of an examining physician may not be accepted over the contrary opinion of a treating physician unless there is good cause for crediting the examining physician's opinion over the opinions of the treating physicians. Lewis v. Callahan, 125 F.3d 1436, 1440-41 (11th Cir. 1997). Finally, the opinions of non-medical doctors are entitled to less weight than the opinions of medical doctors. Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998).

Freeman points to an August 20, 2002 report by Dr. Goss, a treating physician, where Dr. Goss indicates that she was limited to sedentary activity. Subsequent evidence revealed, however, that Freeman was not limited to sedentary activity. For instance, Dr. Jacobson, an examining physician, identified no major problems with her knee on January 21, 2003. Dr. Walter, a treating physician, noted on September 9, 2003, that she was doing "quite well" with a normal range of motion and no effusion. Thus, the ALJ had "good cause" to discount Dr. Goss's opinion that Freeman was limited to sedentary activity. See Crawford, 363 F.3d at

6

1159.

Dr. Walter opined that Freeman should have a total knee replacement on October 20, 2004, but the ALJ gave little weight to his opinion because it was based only on Freeman's complaints of severe pain the day after the hearing (before the ALJ). Less than a month earlier, Dr. Walter responded to Freeman's "substantial [and] unremitting knee pain" by stating that there was no evidence of meniscal tears and that her x-rays looked "pretty good" with the "patellofemoral joints not showing that much wear." The inconsistencies between Dr. Walter's opinions combined with the fact that the doctor's subsequent opinion was based primarily on Freeman's complaints of pain, without any medical support, provided "good cause" for the ALJ to give little weight to the opinion that Freeman needed a total knee replacement. See Crawford, 363 F.3d at 1159.

Additionally, while Folsom's opinion did indicate that Freeman had very little functioning, the opinion is entitled to less weight than the opinions of the medical doctors because he is a physical therapist. See Falge, 150 F.3d at 1324. Hence, in light of the evidence from Dr. Walter and Dr. Jacobson indicating that Freeman's injury was not as severe as she claimed, the ALJ's decision to assign no evidentiary value to Folsom's assessment is supported by substantial evidence.

Freeman contends that the ALJ erred in finding her depression not to be

severe.[1]  Contrary to her contention, substantial evidence showed that her mental illness did not significantly limit her ability to do basic work activities. Approximately one month after she began receiving treatment for depression from Dr. Battles, he indicated that while she remained symptomatic, she was alert, active, stable, and improved.  Shortly after this, she told Dr. Battles that she was getting along well.  Dr. Battles indicated in his last report that "[t]he depression has improved and it is stable."

The judgment of the district court is

**AFFIRMED.**

---

[1]  In addition, Freeman contends for the first time in her reply brief that the ALJ failed to consider her depression in combination with her physical restrictions.  Arguments raised for the first time in a reply brief are not properly before this court, and we will not consider them.  Hall v. Coram Healthcare Corp., 157 F.3d 1286, 1290 (11th Cir. 1998).