[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 5, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15667
Non-Argument Calendar

_____

D. C. Docket No. 05-00977-CV-M-N

JENNIFER D. PETTUS,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,[1]
Commissioner, Social Security Administration,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(April 5, 2007)**

Before TJOFLAT, HULL and FAY, Circuit Judges.

PER CURIAM:

---

[1]Pursuant to Fed.R.App.P. 43(c), we have substituted Michael J. Astrue for Jo Anne B. Barnhart as the named defendant-appellee.

Jennifer Pettus appeals the district court's order affirming the Commissioner's denial of her application for disability insurance benefits, 42 U.S.C. § 405(g), and supplemental security income, 42 U.S.C. § 1383(c)(3). First, Pettus argues that the ALJ erred in finding that she did not meet listing 12.05C because he relied on invalid IQ tests to make the finding. Second, Pettus argues that the ALJ, in evaluating her residual functional capacity, should not have relied on the expert medical testimony of Dr. Doug McKeown at the hearing because such testimony was uninformed and based on invalid tests. For the reasons set forth below, we affirm.

Our review of the Commissioner's decision is limited to whether such decision is supported by substantial evidence on the record as a whole, and whether the proper legal standards were applied. See Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," or "more than a mere scintilla." Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998). "Substantial evidence is less than a preponderance . . . ," and "[t]his limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). In addition, "[a]s a general principle, we will not address an argument that has not

been raised in the district court." Stewart v. Dept. of Health and Human Services, 26 F.3d 115, 115 (11th Cir. 1994).

"The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that she is disabled." Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). The examiner must determine: (1) whether the claimant is engaged in substantial gainful activity; if so, (2) whether the claimant has a severe impairment; if yes, (3) whether the claimant has any impairment which meets or equals those contained in a list of impairments; if not, (4) whether the claimant is unable to perform her past relevant work; if so (5) whether the claimant can perform other work. Id. At step five, the burden is on the Commissioner to show that other work exists in significant numbers in the national economy that the claimant is able to perform. Id.

Pettus argues that the ALJ erred in finding that she did not meet listing 12.05C because he relied on invalid IQ tests to make the finding. Specifically, she argues that the ALJ relied on test results that were generated by the WAIS-R, these results were not reliable, and the ALJ should have used test results generated using the WAIS-III.

Listing 12.05, the listing category for mental retardation, begins with an introductory paragraph, which states that "[m]ental retardation refers to

3

significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.05. The listing further provides that the "required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." Id. Subsection C requires a claimant demonstrate "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. at § 12.05(C). Section 12.00A states in pertinent part that "[l]isting 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing." Id. at § 12.00A (emphasis added).

We have determined that, to be considered for disability benefits under Listing 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive functioning; and (3) have manifested deficits in adaptive behavior before age 22. Crayton v. Callahan, 120 F.3d 1217, 1219 (11th cir. 1997). In addition, for presumptive disability under

4

12.05C, the claimant must have (1) a valid IQ score of 60 through 70 inclusive, and (2) an additional mental or physical impairment significantly affecting the claimant's ability to work.  Id. at 1219-1220.

To prevail on appeal, Pettus has to show that substantial evidence did not support the ALJ's finding that she did not have the required deficits in adaptive functioning necessary to satisfy the introductory paragraph of § 12.05.  The ALJ's finding as to adaptive functioning was the reason why Pettus did not meet the Listing.   However, in the district court, Pettus did not challenge the ALJ's findings with regard to Pettus's adaptive functioning.  Instead, Pettus only argued that the ALJ erred in relying on invalid testing and uninformed medical expert testimony. Therefore, the issue is waived. See Stewart, 26 F.3d at 115.  In any event, assuming that the issue is not waived on appeal, Pettus has not argued to us on appeal that the ALJ erred in finding that Pettus lacked the requisite deficits in adaptive functioning necessary to satisfy the introductory paragraph of the Listing. Thus, the issue is also abandoned. See Allison v. McGhan Medical Corp., 184 F.3d 1300, 1317 n. 17 (11th Cir. 1999) (stating that issues "not clearly outlined in an appellant's initial brief are deemed abandoned.").

Pettus also argues that the ALJ should not have relied on the expert medical testimony of Dr. McKeown at the hearing because such testimony was uninformed

5

and based on invalid tests. In making this argument, Pettus appears to be challenging the ALJ's findings as to either, or both, her residual functioning capacity, which is step four in the five-step sequential process for determining disability, or her ability to perform other work that exists in significant numbers in the national economy, which is the fifth step. Although it is not entirely clear, Pettus's reasoning appears to be as follows: (1) the ALJ gave controlling weight to testing done in 1997 by Dr. Kirkland; (2) the Social Security Administration's consultative evaluation on which the Administration relied was invalid; and (3) therefore, Dr. McKeown's testimony was uninformed and the ALJ erred in relying on it. Pettus then makes additional arguments regarding the invalidity of certain IQ tests.

In making a disability determination, the regulations specify that, where evidence in the record is inconsistent, all of the evidence will be weighed to see whether the claimant is disabled. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Residual functioning capacity determinations are made "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

A medical opinion of a treating source is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the

6

record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  A treating source is defined as the claimant's own physician or psychologist who has provided the claimant with medical treatment or evaluation, and who has had an ongoing relationship with the claimant. 20 C.F.R. § 416.902.  A physician or psychologist is not a treating source if the relationship "is not based on [the claimant's] need for treatment or evaluation, but solely on [the claimant's] need to obtain a report in support of [the claim] for disability. Id.  Additionally, the opinion of a treating source may be discounted by the ALJ where the opinion is not supported by objective medical evidence or is merely conclusory. See Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987).

In this case, the ALJ weighed the various medical opinions in accordance with the factors contained in the regulations. See 20 C.F.R. §§ 404.1527, 416.927. The ALJ gave "great weight" to the testimony and opinion of Dr. McKeown.  The ALJ found Dr. McKeown's opinion to be "strongly supported by the evidence from examining and treating sources."  The ALJ gave "substantial weight" to the opinions of Dr. Eslami, Dr. Harris, and Dr. Schulman.  The ALJ stated that the opinions of Dr. Kirkland, Dr. Babb, Dr. Majure, Dr. Hammack, Dr. Rogers, Dr. Rhodes, Dr. Warren, and the practitioners at Baptist Medical Center, Health Services Inc., and Lister Hill Clinic Health Center were of considerable probative

7

value.

The ALJ gave little weight to Dr. Storjohann's opinion because the ALJ found, and Dr. McKeown pointed out during the hearing, that Dr. Storjohann's opinion was inconsistent with his own report. For example, Dr. Storjohann reported that Pettus's "thoughts and speech were logical, coherent, and goal-directed," "[h]er thinking style was quite concrete," and "[s]he is able to make simple work decisions." Dr. Storjohann, however, then concluded that Pettus "appears to have moderate to marked deficits in her ability to understand, carry out, and remember instructions in a work setting. She appears to have marked deficits in her ability to respond appropriately to supervision, co-workers, and work pressures in a work setting." In making the decision to accord little weight to Dr. Storjohann's opinion, the ALJ appropriately pointed to case law providing that even the opinion of a treating physician, which Dr. Storjohann was not because, among other reasons, he did not have an ongoing treatment relationship with Pettus, can be discounted where the opinion is not supported by objective medical evidence or is merely conclusory. The ALJ also considered the testimony of the vocational expert. Pettus's objection to the weight accorded to the medical opinions, including that of Dr. McKeown, is based on her argument that controlling weight was given to the 1997 consultative evaluation performed by Dr.

8

Kirkland. The record shows that the ALJ did not give controlling weight to the evaluation performed by Dr. Kirkland and Pettus does not make any other specific objections to the manner in which the ALJ weighed the numerous opinions in the record. The ALJ carefully reviewed and evaluated all of the medical evidence explaining why more weight was being accorded to some. These explanations are supported by the record. The ALJ then considered the testimony of the vocational expert that Pettus was capable of performing all of her past relevant work, and, additionally, other jobs existing in the regional economy.

Upon careful review of the administrative proceedings, the medical record, the proceedings in the district court, and upon consideration of the parties' briefs, we discern no reversible error. Because Pettus has waived or abandoned any objection to the ALJ's finding that she lacks the requisite deficits in adaptive functioning that are necessary to meet the introductory paragraph of Listing 12.05C, and because substantial evidence supports the ALJ's findings with regard to Pettus's residual functioning capacity and ability to perform jobs existing in significant numbers in the national economy, we affirm.

**AFFIRMED.**