[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10154
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-20210-JLK

GLADYS LAPICA,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 14, 2012)

Before BARKETT, PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Gladys Lapica appeals from the district court's order affirming the Commissioner's denial of her application for disability insurance benefits, pursuant to 42 U.S.C. §§ 405(g), 1383(c).  First, Lapica asserts the administrative law judge (ALJ) erred by failing to apply the Medical Vocational Guidelines (the grids) and relying on a vocational expert's (VE's) testimony instead of the grids to determine that Lapica was not disabled.  In particular, Lapica contends that, although the ALJ found that she had transferable skills, she was limited to unskilled work, and therefore, the ALJ was required to make a finding of "disabled" under the applicable grid rule.  Second, she asserts the ALJ erred by failing to incorporate the opinion of her treating physician into the residual functional capacity (RFC) finding and the hypothetical questioning of the VE.  After review,[1] we affirm in part, and vacate and remand in part.

## I.

The Social Security regulations set forth the following five-step "sequential evaluation" process to determine whether a claimant is disabled: (1) the disability

---

[1] We review de novo the legal principles underlying the ALJ's decision, but review "the resulting decision only to determine whether it is supported by substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  Substantial evidence is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  We do not reweigh the evidence or substitute our own judgment for that of the ALJ, even if we find that the evidence preponderates against the ALJ's factual findings. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

examiner determines whether the claimant is engaged in "substantial gainful activity"; (2) if not, the examiner decides whether the claimant's condition or impairment is "severe," *i.e.*, whether it significantly limits the claimant's physical or mental ability to do basic work activities; (3) if so, the examiner decides whether the claimant's impairment meets or equals the severity of the specified impairments in the Listing of Impairments (Listing), thereby precluding any gainful work activity; (4) if the claimant has a severe impairment that does not meet or equal the severity of an impairment in the Listing, the examiner assesses a claimant's RFC, which measures whether a claimant can perform past relevant work despite the impairment; (5) if the claimant is unable to do past relevant work, the examiner determines whether, in light of RFC, age, education, and work experience, the claimant can perform other work. *See Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. §§ 404.1520(c)-(f), 416.920(c)-(f).

If the ALJ reaches the fifth step of analysis for Social Security benefits, the Commissioner bears the burden of determining whether there is other work available in significant numbers in the national economy that the claimant can perform. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). "There are two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy." *Phillips v. Barnhart*, 357 F.3d

3

1232, 1239 (11th Cir. 2004). First, the ALJ may apply the grids, and second, the ALJ may use a VE. *Id.* at 1239-40. If the ALJ determines that a claimant's nonexertional limitations do not significantly limit her basic work skills at the sedentary work level, then the ALJ may rely on the grids to determine whether she is disabled. *Id.* at 1243. "If, however, the ALJ determines that [the claimant's] nonexertional limitations significantly limit her basic work skills at the sedentary work level, then the ALJ must consult a vocational expert." *Id.*

Nonexertional limitation are limitations or restrictions imposed by an impairment that affect a claimant's ability to meet the demands of jobs other than strength demands. 20 C.F.R. §§ 404.1569a(c). Nonexertional impairments include mental impairments. *See id.* If a claimant has a combination of exertional and nonexertional limitations, the grids "are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the [grid rules] provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional impairments." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2).

Grid Rules 201.14 and 201.15 both apply to individuals who are closely approaching advanced age, are high school graduates, and have skilled or

semi-skilled work experience.  *See* 20 C.F.R. pt. 404, subpt. P. app. 2, § 201.00, Table No. 1.  They differ only in terms of transferability of skills.  *See id.*  Under Grid Rule 201.14, if the claimant's previous work experience was "skilled or semiskilled" and those skills are "not transferable," then the claimant is disabled.  *Id.*  On the other hand, under Grid Rule 201.15, if the claimant's previous work experience was "skilled or semiskilled" and those skills are "transferable," then the claimant is not disabled.  *Id.*  The agency's regulations clarify that "[v]ocational adjustment to sedentary work may be expected where the individual has special skills or experience relevant to sedentary work," whereas a lack of such special skills or experience would indicate "an inability to engage in substantial gainful activity" where an individual is restricted to sedentary work. 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.00(c).

The ALJ found that Lapica was closely approaching advanced age, had a high school education, and had semi-skilled work experience with transferable skills.  Thus, Rule 201.15 was the applicable grid rule.  *See* 20 C.F.R. pt. 404, subpt. P. app. 2, § 201.15.  Because Lapica also had the nonexertional mental limitation that she could only "occasionally understand, remember, and carry out detailed instructions and procedures," as well as various postural limitations, a finding of not disabled under Grid Rule 201.15 served only as a framework, and

5

the ALJ did not err in obtaining a VE to testify as to the extent that these limitations reduced the range of work that she could perform at a sedentary level. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(e)(2).  Therefore, the ALJ did not err by relying on the VE's testimony, instead of the grids, to determine that Lapica was not disabled.

Further, the ALJ did not apply the wrong grid rule.  Lapica does not dispute the credibility of the VE's testimony identifying her previous jobs as semi-skilled with transferable skills.  Rather, she argues that, even though she had transferable skills, Grid Rule 201.14 should apply because the ALJ found that she was limited to unskilled work.  Rule 201.14 cannot apply, however, because, by definition, it only applies when an individual lacks transferable skills.  *See* 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a) ("Where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled.").

The unskilled work limitation is not considered in deciding which grid rule to apply, because the ultimate decision of disability is determined by whether a significant number of jobs exist at the unskilled level that a claimant with the specific vocational factors and RFC could perform.  *See* 20 C.F.R. pt. 404, subpt.

6

P. app. 2, § 200.00(b) ("The existence of jobs in the national economy is reflected in the 'Decisions' shown in the rules; *i.e.*, in promulgating the rules, administrative notice has been taken of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels."). Accordingly, the ALJ followed the proper procedure in relying on the VE's testimony to determine that Lapica was not disabled.

## II.

The RFC is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

Social Security Ruling 96-8p. Sedentary work involves lifting no more than 10 pounds at a time, with occasional lifting or carrying of articles such as docket files, ledgers, or small tools, and occasional walking or standing. 20 C.F.R. §§ 404.1567(a), 416.967(a).

> Social Security Ruling 83-10 elaborates on § 404.1567(a) by providing that "'occasionally' means occurring from very little up to

7

one-third of the time," and that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."

*Kelley v. Apfel*, 185 F.3d 1211, 1214 n.2 (11th Cir. 1999).  Additionally, the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  *Lewis*, 125 F.3d at 1440.

The ALJ's determination that Lapica could sit for six to eight hours was inconsistent with Dr. Krikorian's opinion that Lapica could sit for only four hours. Moreover, the ALJ did not expressly incorporate this limitation into her hypothetical questioning of the VE, but rather, apparently asked the VE to assume that Lapica was capable of "performing the exertional demands of [light work]" with the additional limitation "that she needs to sit to rest."  In addition, the ALJ's determination that Lapica could perform sedentary work was arguably inconsistent with Dr. Krikorian's opinion that Lapica could sit for four hours, stand for two hours, and walk for two hours in an eight-hour day, because sedentary work generally requires the ability to sit for approximately six hours.  *See Kelley*, 185 F.3d at 1214.  Finally, the ALJ's finding that Lapica could "occasionally balance, stoop, crouch, kneel, and crawl and climb" is inconsistent with Dr. Krikorian's opinion that she could "never" balance, stoop, crouch, kneel, or crawl."  However,

8

sedentary work appears to be consistent with that limitation.  *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).

Although the ALJ, in her hypothetical questions to the VE, asked the VE to consider "the sit/stand option . . . at will" in determining whether Lapica could perform any other jobs, the hypothetical questions did not expressly incorporate Dr. Krikorian's opinion that Lapica had the ability to sit for four hours (up to two hours at a time), stand for two hours (up to twenty minutes at a time), and walk for two hours (up to twenty minutes at a time and occasionally with a cane) in an eight-hour day.  Therefore, it is unclear, based on the VE's response, whether jobs existed in sufficient numbers in the national economy that Lapica could perform. Therefore, the ALJ's determination that Lapica was not disabled was not supported by substantial evidence.  Accordingly, the matter is remanded for a determination of whether, in light of the opinion of her treating physician, jobs exist in sufficient numbers in the national economy that Lapica can perform.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**