[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13559
Non-Argument Calendar

_____

D.C. Docket No. 3:19-cv-01331-TJC-JBT


CRYSTAL PINCKNEY,
Individual,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,
Social Security Administration,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 31, 2021)

Before WILSON, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Crystal Pinckney appeals the district court's order affirming the Commissioner of the Social Security Administration's denial of her application for supplemental security income (SSI) benefits under 42 U.S.C. §§ 405(g) and 1383(c).  She argues that substantial evidence does not support the Administrative Law Judge's (ALJ) conclusion that she did not meet 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(B) (Listing 12.05(B)) and thus was not conclusively presumed disabled because of her intellectual disorder at step three of the five-part sequential evaluation process.  Specifically, she contests the ALJ's conclusions that she had a full-scale or comparable intelligence quotient (IQ) above 70 and that she did not exhibit significant deficits in adaptive functioning.

I.

"In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).  The resulting decision, however, is reviewed only to determine whether it is supported by substantial evidence.  *Id.*  Substantial evidence is "more than a mere scintilla."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (internal quotation marks omitted).  We will not "decide the facts anew, reweigh the evidence, or substitute our judgment" for that of the Commissioner's.  *Winschel v. Comm'r of*

2

*Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  Thus, "[e]ven if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (per curiam).

The individual seeking social security disability benefits bears the burden of proving that she is disabled.  *Moore*, 405 F.3d at 1211.  In determining whether a claimant has met that burden, the ALJ will consider medical opinions from acceptable medical sources, including licensed physicians and licensed psychologists.  20 C.F.R. §§ 404.1502(a), 404.1527(b).  "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel*, 631 F.3d at 1179.

## II.

The Social Security Regulations set forth a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4).  The ALJ must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether she has a medically severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals the listings in the regulations; (4) if not, whether she can perform her past relevant work; and (5) if not, whether, based on her age, education, and work experience, she can perform other work found in the national

3

economy.  *Id.*  If the ALJ can conclusively ascertain that a claimant is disabled or not disabled at a step, the determination is made, and the evaluation process does not proceed to the next step.  *Id.*

Pinckney's appeal focuses on step three, which requires consideration of the medical severity of a claimant's impairments.  *Id.* § 404.1520(a)(4)(iii).  If a claimant is found to "have an impairment(s) that meets or equals one of [the] listings in appendix 1 of this subpart and meets the duration requirement," she will be found disabled.  *Id.*; *see also Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.")

Listing 12.05 in appendix 1 pertains to intellectual disorders and may be satisfied, in relevant part, by meeting the three criteria set forth in paragraph B of that listing.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(B).  First, a claimant must demonstrate significantly subaverage intellectual functioning evidenced by, in relevant part, a "full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence."  *Id.* § 12.05(B)(1)(a).  Second, the claimant must demonstrate "[s]ignificant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:" (1) understanding,

4

remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself. *Id.* § 12.05(B)(2). Finally, the evidence about a claimant's intellectual and adaptive functioning and history must support a conclusion that the disorder began prior to age 22. *Id.* § 12.05(B)(3).

The Social Security Regulations elaborate the areas of mental functioning relevant to the adaptive functioning determination as follows. *Id.* § 12.00(E). Understanding, remembering, or applying information refers to the claimant's abilities to learn, recall, and use information to perform work activities, e.g., understanding and learning terms, instructions, and procedures; following one- or two-step oral instructions to carry out a task; and describing work activity to someone else. *Id.* Interacting with others refers to the claimant's abilities to relate to and work with supervisors, co-workers, and the public, e.g., cooperating with others, asking for help when needed, initiating or sustaining conversation, and understanding and responding to social cues. *Id.* Concentrating, persisting, or maintaining pace refers to the claimant's abilities to focus attention on work activities and stay on task at a sustained rate, e.g., initiating and performing a task, completing tasks in a timely manner, and sustaining an ordinary routine and regular attendance at work. *Id.* Finally, adapting or managing oneself refers to the claimant's abilities to regulate emotions, control behavior, and maintain well-being

in a work setting, e.g., responding to demands, making plans independently of others, and maintaining personal hygiene and attire appropriate to a work setting. *Id.*

The effects of a claimant's mental disorder, and the degree of a claimant's limitations, are evaluated "based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation." *Id.* § 12.00(F)(2). To satisfy the criteria under paragraph B of Listing 12.05, a claimant's "mental disorder must result in extreme limitation of one, or marked limitation of two," areas of mental functioning used for evaluating adaptive functioning. *Id.*

As relevant here, a moderate limitation means that the claimant's "functioning in th[e] area independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c). A marked limitation means that the claimant's "functioning in th[e] area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* § 12.00(F)(2)(d). Finally, an extreme limitation means that the claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.* § 12.00(F)(2)(e).

### III.

Regardless of whether Pinckney satisfied Listing 12.05(B)'s IQ requirement, her claim fails because substantial evidence supports the ALJ's conclusion that she

did not exhibit significant deficits in adaptive functioning, i.e., that she did not exhibit marked or extreme limitations in any of the relevant categories of mental functioning. *See id.* § 12.05(B). The evidence—particularly Pinckney's medical records—supports a finding that she exhibited only moderate limitations in understanding, remembering, or applying information. *See id.* § 12.00(E), (F). Doctors noted that Pinckney had grossly intact memory and a coherent, logical, well-organized, linear, and goal-directed thought process. Doctors also noted that she had good judgment and comprehension and an ability to think abstractly. Further, she also reported learning different fabrics and shades of color from a fashion design class she attended while incarcerated in state prison, and she was noted as being able to correctly complete simple math problems.

The evidence also supports a finding that Pinckney had only moderate limitations in interacting with others. *See id.* She was able to attend a fashion design class, participated in group therapy, was described by examiners as cooperative, and was noted to have interacted with others appropriately while hospitalized.

The evidence further supports a finding that Pinckney had only moderate limitations in concentrating, persisting, or maintaining pace. *See id.* Pinckney graduated high school with a special diploma and reported that she would finish what she started. She was also able to perform basic acts related to self-care

7

independently, and would go to school, do homework, and perform basic house chores. She was noted by examiners as alert and attentive, with one examiner noting that she had good concentration and an ability to focus on daily tasks. She also reported that she could listen to music and watch television.

Finally, the evidence supports a finding that Pinckney had only moderate limitations in her ability to adapt or manage herself. *See id.* Pinckney was consistently noted as being either appropriately- or well-groomed and hygienic, and examiners noted that her attitude and behavior were proper and normal. Notably, Pinckney exhibited normal adaptive behavior and no impairment in adaptive functioning while incarcerated. And, at the time of her most recent examination, the examiner noted that she exhibited good behavioral control. In light of these facts, we cannot say that the ALJ's decision is not supported by substantive evidence in the record. *See Winschel*, 631 F.3d at 1178.

Therefore, because more than a mere scintilla of evidence supports the ALJ's conclusion that Pinckney did not demonstrate significant deficits in adaptive functioning, Pinckney has not met her burden of proving she was conclusively disabled under Listing 12.05(B).[1] *See Moore*, 405 F.3d at 1211; *Biestek*, 139 S. Ct. at 1154. We accordingly affirm the denial of benefits.

---

[1] To support her contention that she demonstrated significant deficits in adaptive functioning, Pinckney relies heavily on the opinion of consultative evaluators Drs. Austin and Burgos, who opined after one examination in January 2013 that her full-scale IQ was 47, that she would need

**AFFIRMED.**

---

assistance managing her own funds, and that she exhibited impaired social functioning and significantly impaired functional abilities.  However, the record supports the ALJ's decision to give their opinion little weight because it was vague and outdated, and they were one-time examiners whose opinions were not entitled to controlling deference.  *See Winschel*, 631 F.3d at 1179; *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1260 (11th Cir. 2019) (per curiam) (explaining that the opinions of one-time examiners are not entitled to deference because they are not considered "treating physicians").